[No. C062321. Third Dist. Oct. 25, 2010.]

ALAN KEYES et al., Plaintiffs and Appellants, v.
DEBRA BOWEN, as Secretary of State, etc., et al., Defendants and
Respondents.

COUNSEL

United States Justice Foundation and Gary G. Kreep for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, Zackery P. Morazzini and Peter A. Krause, Deputy Attorneys General, for Defendant and Respondent Debra Bowen, as Secretary of State, etc.

Strumwasser & Woocher, Michael J. Strumwasser, Fredric D. Woocher, Aimee E. Dudovitz; Perkins Coie and Marc E. Elias for Defendants and Respondents President Barack Obama, Vice-President Joseph Biden and the 55 California Presidential Electors of 2008.

OPINION

SCOTLAND, Acting P. J.*—This appeal concerns the sufficiency of a petition for writ of mandate filed by those who have come to be known as "Birthers"—people who claim President Barack Obama is not a natural born citizen of the United States of America and, hence, is ineligible to be the President.

Plaintiffs Alan Keyes, Wiley S. Drake, Sr., and Markham Robinson appeal from the judgment of dismissal entered after the trial court sustained, without leave to amend, demurrers of defendants President Obama, Vice-President Joseph Biden, the 55 California Presidential Electors of 2008 (the Electors), and Secretary of State Debra Bowen. Plaintiffs contend that the trial court erred because, they argue, there is a "triable issue of material fact" concerning whether the Secretary of State has the affirmative duty to verify that candidates seeking elective office are eligible for office. They also argue the court erred in determining that it lacked jurisdiction to resolve certain issues raised in the petition. In plaintiffs' view, there is "a triable issue of material fact as to which branch of government, and what office within that branch, has the duty to ensure that all candidates on a California ballot meet the eligibility requirements to hold office."

Plaintiffs' contentions lack merit. Among other things, we conclude that the Secretary of State does not have a duty to investigate and determine

*Retired Presiding Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

whether a presidential candidate meets eligibility requirements of the United States Constitution. As we will explain, the presidential nominating process is not subject to each of the 50 states' election officials independently deciding whether a presidential nominee is qualified, as this could lead to chaotic results. Were the courts of 50 states at liberty to issue injunctions restricting certification of duly elected presidential electors, the result could be conflicting rulings and delayed transition of power in derogation of statutory and constitutional deadlines. Any investigation of eligibility is best left to each party, which presumably will conduct the appropriate background check, or risk that its nominee's election will be derailed by an objection in Congress, which is authorized to entertain, and resolve the validity of, objections following the submission of the electoral votes.

## FACTS

Plaintiffs filed a petition for writ of mandate against Secretary of State Bowen, President Obama, Vice-President Biden, and the Electors on November 13, 2008,[1] and filed an amended petition on February 23, 2009.

In their first amended petition, which is not a model of clarity, plaintiffs observe that the Secretary of State is responsible for certifying candidates for inclusion on the ballot and that, "[h]istorically, California Secretaries of State have exercised their due diligence by reviewing necessary background documents verifying that the candidates that were submitted by the respective political parties as eligible for the ballot were indeed eligible." According to plaintiffs, the voters have an expectation that compliance with the minimum qualifications for office will be confirmed by the officials overseeing the election process. The gravamen of their action is there is a reasonable doubt President Obama is a natural born citizen, as is required to become President of the United States (U.S. Const., art. II, § 1), and the Secretary of State had a ministerial duty to verify that President Obama met the constitutional qualifications for office before certifying him for inclusion on the ballot.

Plaintiffs asserted that "[f]ailure to grant the relief sought, demanding that [the Secretary of State] be ordered to verify the *constitutionally required qualifications of OBAMA, and any and all future candidates* for President, not only allows, but promotes, an overwhelming degree of disrespect for

---

[1] President Obama and Vice-President Biden were elected by the American voters on November 4, 2008, but were not formally elected by the Electoral College until December 15, 2008, after the petition was filed.

our Constitution and for our electoral process, and creates such a lack of confidence of voters in the primary and electoral process itself, that it would confirm a common belief that no politician has to obey the laws of this Country, respect our election process, or follow the United States Constitution." (Italics added.)

Plaintiffs also alleged that the Electors had an affirmative duty to discover whether the presidential candidate was a natural born citizen, since they were required to vote for the President "in the manner directed by the Constitution" (3 U.S.C. § 8), and that one of the persons nominated as an elector, "Ilene Huber," died on October 22, 2001, and a woman by the name of "Ilene Haber" was permitted to vote in place of Ms. Huber, without being elected to take her place as required by the Elections Code.

Plaintiffs asked the trial court to issue a writ of mandate barring the Secretary of State from certifying the names of the Electors and from transmitting to each elector a certificate of election until documentary proof was produced and verified showing that any future presidential candidate is qualified to serve as President of the United States. Plaintiffs also asked the court to bar "future California Electors from signing the Certificate of Vote until such documentary proof is produced and verified showing that any future Presidential candidate is qualified to serve as President of the United States." In addition, plaintiffs sought to bar the Electors from signing the certificate of vote unless they complied with the Elections Code requirements concerning replacing absent electors.

Secretary of State Bowen demurred on the grounds that (1) the petition failed to state facts sufficient to constitute a cause of action against her because she did not have a ministerial duty to demand detailed proof of citizenship from presidential candidates; (2) the petition was moot given that the election had been held; (3) the controversy was not ripe as to future elections; (4) whether a presidential candidate is qualified for office was a matter committed to Congress and the federal courts; and (5) the alleged substitution of Ilene Haber for the deceased Ilene Huber merely represented a typographical error.

President Obama, Vice-President Biden, and the Electors demurred on the grounds that (1) the petition did not allege facts sufficient to state a cause of action, as they had no ministerial duty to provide to the Secretary of State, or verify proof of, qualifications to hold office, (2) the petition did not seek any relief against the President or Vice-President, (3) the state court lacked

jurisdiction over the matter, which was governed by federal law and required objections to presidential qualifications to be lodged with Congress, (4) the petition was moot, and (5) to the extent that the petition sought relief as to future elections, it suffered from a misjoinder of parties because the court could not know who the candidates or electors would be in the future.

The trial court sustained both demurrers, ruling the Secretary of State was required to see that state election laws are enforced, but plaintiffs had not identified a state election law imposing a ministerial duty to demand documentary proof of birthplace from presidential candidates.

The court dispensed with the claim concerning California Elector "Ilene Huber" by taking judicial notice of a document showing that the name had been a typographical error and that "Ilene Haber" was the actual elector, not an improper replacement.

The court sustained the demurrer of the President and Vice-President, noting the petition did not seek any relief against them and did not identify any ministerial duty on their part that they failed to perform and, thus, failed to state a cause of action as to them.

Similarly, the court ruled plaintiffs failed to identify any ministerial duty the Electors failed to perform. The requirement they vote "in the manner directed by the Constitution" (3 U.S.C. § 8) merely refers to the mechanics of casting votes, found in the Twelfth Amendment to the United States Constitution. The Electors did not have an affirmative duty to discover whether the candidate was a natural born citizen and, in fact, were required by statute to vote for their party's nominee. (Elec. Code, § 6906; further section references are to the Elections Code unless otherwise specified.)

The court also found the petition was moot as to all parties with respect to the 2008 General Election because the Electoral College had voted, and Mr. Obama had been inaugurated as President of the United States. It was not ripe as to future elections because the issues were not framed with sufficient concreteness and immediacy to allow the court to render a conclusive and definitive judgment rather than an advisory opinion based on hypothetical facts or speculative future events.

And the court ruled it lacked jurisdiction over the subject matter of the action in that federal law establishes election procedures and the exclusive means for challenges to the qualifications of the President and Vice-President. The appropriate procedure was an action before the United States Congress

pursuant to the Twelfth Amendment to the United States Constitution and 3 United States Code section 15. In the trial court's words, plaintiffs' "belief in the importance of their arguments is not sufficient to confer jurisdiction upon this Court."

Plaintiffs appealed from the ensuing judgment of dismissal.

## STANDARD OF REVIEW

A demurrer may be sustained without leave to amend where the facts are not in dispute and the nature of the plaintiff's claim is clear but, under substantive law, no liability exists. (*Seidler v. Municipal Court* (1993) 12 Cal.App.4th 1229, 1233 [16 Cal.Rptr.2d 90].) On appeal from a judgment of dismissal after an order sustaining a demurrer without leave to amend, we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We give the complaint a reasonable interpretation and treat the demurrer as admitting all material facts properly pleaded, but we do not assume the truth of contentions, deductions, or conclusions of law. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

The fact that we examine the complaint de novo does not mean that plaintiffs need only tender the complaint and hope we can discern a cause of action. It is plaintiffs' burden to show either that the demurrer was sustained erroneously or that the trial court's denial of leave to amend was an abuse of discretion. (*Savage v. Trammell Crow Co.* (1990) 223 Cal.App.3d 1562, 1576 [273 Cal.Rptr. 302]; *Bush v. California Conservation Corps* (1982) 136 Cal.App.3d 194, 200 [185 Cal.Rptr. 892].)

This burden is governed by appellate rules and standards of review with which many appellants appear to be unfamiliar.

For example, the trial court's judgment is presumed to be correct, and the appellant has the burden to prove otherwise by presenting legal authority on each point made and factual analysis, supported by appropriate citations to the material facts in the record; otherwise, the argument may be deemed forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273]; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76

Cal.Rptr.2d 457]; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115–1116 [75 Cal.Rptr.2d 27]; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [33 Cal.Rptr.2d 838]; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [85 Cal.Rptr.2d 521].)

It is the appellant's responsibility to support claims of error with citation and authority; this court is not obligated to perform that function on the appellant's behalf. (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 113 [113 Cal.Rptr.2d 90].)

The appellant may not simply incorporate by reference arguments made in papers filed in the trial court, rather than briefing them on appeal. (*Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 334 [4 Cal.Rptr.2d 897].) And the appellant must present each point separately in the opening brief under an appropriate heading, showing the nature of the question to be presented and the point to be made; otherwise, the point will be forfeited. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830–1831, fn. 4 [41 Cal.Rptr.2d 263].) This rule is "designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass." (*Landa v. Steinberg* (1932) 126 Cal.App. 324, 325 [14 P.2d 532].)

Appellants may not attempt to rectify their omissions and oversights for the first time in their reply briefs because this deprives the opposing party of an opportunity to respond. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10 [66 Cal.Rptr.2d 319, 940 P.2d 906]; *American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453 [13 Cal.Rptr.2d 432]; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–765 [60 Cal.Rptr.2d 770].)

## DISCUSSION

## I

With the aforementioned rules in mind, we turn to plaintiffs' challenge to the trial court's ruling sustaining the demurrer of the President, Vice-President, and Electors on the ground that plaintiffs' petition for writ of mandate failed to state a cause of action.

■ A writ of mandate will lie "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled . . . ." (Code Civ. Proc., § 1085.) "The two requirements for mandamus thus are (1) a clear, present and usually ministerial duty on the part of the respondent, and (2) a clear, present and beneficial right in the petitioner to performance of that duty." (*Barnes v. Wong* (1995) 33 Cal.App.4th 390, 394–395 [39 Cal.Rptr.2d 417].)

The trial court found that plaintiffs did not identify any ministerial duty that the President and Vice-President failed to perform, and the petition did not seek any relief against them; thus, plaintiffs failed to state a cause of action against those defendants. Plaintiffs do not present any reasoned argument under an appropriate argument heading challenging this determination. They attack other reasons given by the trial court in support of its order sustaining defendants' demurrer, but not this one. Accordingly, they have forfeited any claim that the trial court erred in sustaining the demurrer of the President and Vice-President.

The trial court also determined that plaintiffs did not identify any ministerial duty the Electors failed to perform, nor demonstrate that they had a ministerial duty to determine if their party's nominee was a natural born citizen. The Electors had to "vote for President and Vice President, respectively, in the manner directed by the Constitution" (3 U.S.C. § 8), which refers to the constitutional directive found in the Twelfth Amendment, which provides in pertinent part: "The electors shall meet in their respective states and vote by ballot for President and Vice President, one of whom, at least, shall not be an inhabitant of the same state with themselves; they shall name in their ballots the person voted for as President, and in distinct ballots, the person voted for as Vice President, and they shall make distinct lists of all persons voted for as President, and of all persons voted for as Vice President, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the President of the Senate . . . ."

■ There is no obligation that the electors first determine whether the presidential candidate is eligible for office.

Similarly, the Elections Code does not impose on the electors any obligation to determine a presidential candidate's eligibility. The pertinent provisions direct that the electors "shall assemble at the State Capitol at 2 o'clock in the afternoon on the first Monday after the second Wednesday in December next following their election" (§ 6904) and "shall vote by ballot for that person for President and that person for Vice President of the United States,

who are, respectively, the candidates of the political party which they represent, one of whom, at least, is not an inhabitant of this state." (§ 6906.) "The electors shall make separate lists of all persons voted for as President and of all persons voted for as Vice President, and of the number of votes for each, which lists they shall sign, certify, seal, and transmit by mail to the seat of the Government of the United States, directed to the President of the Senate." (§ 6908.)

In other words, the electors have a ministerial duty to convene on a specific date, in a specific place, to cast their ballots for their parties' nominees, and then transmit their sealed list of votes to the President of the Senate. There is nothing in any state or federal legislation identified by plaintiffs imposing a ministerial duty on the electors to investigate the eligibility of their parties' candidate. Rather, they are directed that they "shall vote by ballot for that person for President and that person for Vice President of the United States, who are, respectively, the candidates of the political party which they represent . . . ." (§ 6906.)

Acknowledging that the Electors had a ministerial duty to vote for their party's candidate, plaintiffs present no cognizable argument, supported by analysis and authority, demonstrating the Electors had a duty to determine if the candidate was a natural born citizen before casting their ballots.

Consequently, plaintiffs have failed to meet their burden of demonstrating that the trial court erred in sustaining the Electors' demurrer on the ground that the petition failed to state a cause of action.

## II

The trial court also ruled that plaintiffs failed to state a cause of action against Secretary of State Bowen because they did not establish that she had a ministerial duty to investigate and determine President Obama's eligibility for the office of President. Again, plaintiffs fail to establish error.

■ The Secretary of State is charged with ensuring "that elections are efficiently conducted and that state election laws are enforced . . . ." (Gov. Code, § 12172.5.)

With respect to primary elections, section 6041 directs the Secretary of State to "place the name of a candidate upon the presidential primary ballot when he or she has determined that the candidate is generally advocated for or recognized throughout the United States or California as actively seeking the nomination of the Democratic Party for President of the United States. . . . [¶] . . . After the 63rd day preceding a presidential primary

election, the Secretary of State may add candidates to the selection, but he or she may not delete any presidential candidate whose name appears on the announced list except as provided in Section 6043 [(concerning a selected candidate's unqualified affidavit that he or she is not a candidate)]."[2]

Section 6901, which governs general elections, states: "Whenever a political party, in accordance with Section 7100, 7300, 7578, or 7843 [(none of which concern constitutional eligibility)], submits to the Secretary of State its certified list of nominees for electors of President and Vice President of the United States, the Secretary of State shall notify each candidate for elector of his or her nomination by the party. *The Secretary of State shall cause the names of the candidates for President and Vice President of the several political parties to be placed upon the ballot for the ensuing general election.*" (Italics added.)

■ The aforementioned statutes do not impose a clear, present, or ministerial duty on the Secretary of State to determine whether the presidential candidate meets the eligibility criteria of the United States Constitution. Section 6041 gives the Secretary of State some discretion in determining whether to place a name on the primary ballot, but he or she has no such discretion for the general election ballot, which is governed by section 6901. With respect to general elections, section 6901 directs that the Secretary of State *must* place on the ballot the names of the several political parties' candidates.

Plaintiffs rely on *Cleaver v. Jordan* (1968) 393 U.S. 810 [21 L.Ed.2d 87, 89 S.Ct. 43] for the proposition that the Secretary of State has the authority to remove candidates from the ballot if they do not meet the constitutional qualifications. They assert that Secretary of State Jordan would not permit the Peace and Freedom Party to place Leroy Eldridge Cleaver's name on the ballot because he was only 34 years old, a year short of the requisite 35 years of age needed to be a presidential candidate. In appellants' view, this shows the Secretary of State has the duty to investigate a candidate's qualifications and remove the person from the ballot if his or her qualifications are found lacking. Not so.

The citation provided by plaintiffs merely reflects that the United States Supreme Court denied a petition for writ of certiorari; it states nothing about

---

[2] Section 6043 provides: "If a selected candidate or an unselected candidate files with the Secretary of State, no later than the time specified in Section 6042, an affidavit stating without qualification that he or she is not now a candidate for the office of President of the United States, and stating that similar documents, also without qualification, have been or will be timely filed, where applicable, with the appropriate public election official in all other states holding open presidential primaries, that candidate's name shall be omitted from the list of names certified by the Secretary of State to the county elections officials for the ballot and his or her name shall not appear on the ballot."

the facts of the case. As we explained earlier, appellants' arguments must be supported by authority, and we are not obligated to search for it. Besides, the fact that former Secretary of State Jordan excluded a candidate who indisputably did not meet the eligibility requirements does not demonstrate that the Secretary of State has a clear and present ministerial duty to investigate and determine if candidates are qualified before following the statutory mandate to place their names on the general election ballot.

In their reply brief, plaintiffs contend for the first time that section 6901's mandate is unconstitutional and will lead to absurd results. For example, they argue, if the Republican Party nominated Arnold Schwarzenegger as their candidate, section 6901 would require that his name be placed on the ballot for the general election despite his ineligibility because of being foreign born.

The contention is forfeited because it was raised for the first time in their reply brief without a showing of good cause. (*Garcia v. McCutchen, supra,* 16 Cal.4th at p. 482, fn. 10; *American Drug Stores, Inc. v. Stroh, supra,* 10 Cal.App.4th at p. 1453; *Reichardt v. Hoffman, supra,* 52 Cal.App.4th at pp. 764–765.)

█ In any event, the truly absurd result would be to require each state's election official to investigate and determine whether the proffered candidate met eligibility criteria of the United States Constitution, giving each the power to override a party's selection of a presidential candidate. The presidential nominating process is not subject to each of the 50 states' election officials independently deciding whether a presidential nominee is qualified, as this could lead to chaotic results. Were the courts of 50 states at liberty to issue injunctions restricting certification of duly elected presidential electors, the result could be conflicting rulings and delayed transition of power in derogation of statutory and constitutional deadlines. Any investigation of eligibility is best left to each party, which presumably will conduct the appropriate background check or risk that its nominee's election will be derailed by an objection in Congress, which is authorized to entertain and resolve the validity of objections following the submission of the electoral votes. (3 U.S.C. § 15.)[3]

---

[3] The counting of electoral votes in Congress and the process for objecting to them is detailed in section 15 of title 3 of the United States Code, which provides in relevant part: "[T]he votes having been ascertained and counted according to the rules in this subchapter provided, the result of the same shall be delivered to the President of the Senate, who shall thereupon announce the state of the vote, which announcement shall be deemed a sufficient declaration of the persons, if any, elected President and Vice President of the United States, and, together with a list of the votes, be entered on the Journals of the two Houses. Upon such reading of any such certificate or paper, the President of the Senate shall call for objections, if any. Every objection shall be made in writing, and shall state clearly and concisely, and without argument, the ground thereof, and shall be signed by at least one Senator and one

Indeed, in a case very similar to this one, the United States District Court for the Northern District of California dismissed a challenge to John McCain's citizenship, holding that presidential qualification issues are best resolved in Congress. (*Robinson v. Bowen* (N.D.Cal. 2008) 567 F.Supp.2d 1144, 1147.)

■ The federal court noted that title 3 United States Code section 15 sets forth a process for objecting to the President-elect, and the Twentieth Amendment provides that, "if the President-elect shall have failed to qualify, then the Vice President-elect shall act as President until a President shall have qualified; and the Congress may by law provide for the case wherein neither a President-elect nor a Vice President-elect shall have qualified, declaring who shall then act as President, or the manner in which one who is to act shall be elected, and such person shall act accordingly until a President or Vice President shall have qualified." Thus, "mechanisms exist under the Twelfth Amendment and 3 U.S.C. § 15 for any challenge to any candidate to be ventilated when electoral votes are counted, and that the Twentieth Amendment provides guidance regarding how to proceed if a president elect shall have failed to qualify. Issues regarding qualifications for president are quintessentially suited to the foregoing process. Arguments concerning qualifications or lack thereof can be laid before the voting public before the election and, once the election is over, can be raised as objections as the electoral votes are counted in Congress. The members of the Senate and the House of Representatives are well qualified to adjudicate any objections to ballots for allegedly unqualified candidates. Therefore, this order holds that the challenge presented by plaintiff is committed under the Constitution to the electors and the legislative branch, at least in the first instance. Judicial review—if any—should occur only after the electoral and Congressional processes have run their course. [Citation.]" (*Robinson v. Bowen, supra,* 567 F.Supp.2d at p. 1147.)

■ For the reasons stated above, plaintiffs have not established that the Secretary of State has a ministerial duty to investigate and determine whether a presidential candidate is constitutionally eligible to run for that office. Thus, we need not address any of plaintiffs' challenges to the trial court's alternate grounds for sustaining defendants' demurrers.

---

Member of the House of Representatives before the same shall be received. When all objections so made to any vote or paper from a State shall have been received and read, the Senate shall thereupon withdraw, and such objections shall be submitted to the Senate for its decision; and the Speaker of the House of Representatives shall, in like manner, submit such objections to the House of Representatives for its decision . . . ."

## DISPOSITION

The judgment is affirmed. Plaintiffs shall reimburse defendants for their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Sims, J., and Robie, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 2, 2011, S188724. Werdegar, J., did not participate therein.