**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PETA LINDSAY; RICHARD BECKER; PEACE AND FREEDOM PARTY, *Plaintiffs-Appellants*, <br><br> v. <br><br> DEBRA BOWEN, in her official capacity as Secretary of the State of California, *Defendant-Appellee*. | No. 13-15085 <br><br> D.C. No. 2:12-cv-00853-GEB-AC <br><br><br> OPINION |

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., Senior District Judge, Presiding

Argued and Submitted
February 13, 2014—San Francisco, California

Filed May 6, 2014

Before: Alex Kozinski, Chief Judge, Diarmuid F.
O'Scannlain and Mary H. Murguia, Circuit Judges.

Opinion by Chief Judge Kozinski

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's dismissal of a suit alleging that plaintiff Peta Lindsay's constitutional rights were violated when she was excluded, pursuant to California regulation, from appearing on the 2012 presidential primary ballot as a candidate for the Peace and Freedom Party because she was twenty-seven years old and therefore not constitutionally eligible to be president.

The panel held that any burden on First Amendment rights that resulted from California's age requirement, which simply recognized the lines that the Constitution already drew, was minimal. Moreover, the burden was amply justified by the state's asserted interest in protecting the integrity of the election process and avoiding voter confusion.

The panel rejected the equal protection claim, holding that treating ineligible candidates differently from eligible ones was rationally related to the state's interest in maintaining the integrity of the election process. Moreover, the panel held that the Secretary of State does not violate the Equal Protection Clause by excluding from the ballot candidates who are indisputably ineligible to serve, while listing those with a colorable claim of eligibility.

The panel rejected the argument that the Twentieth Amendment prohibits states from determining the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

qualifications of presidential candidates, holding that nothing in the Twentieth Amendment's text or history suggested that it precludes state authorities from excluding a candidate with a known ineligibility from the presidential ballot.

## COUNSEL

Robert E. Barnes (argued), Malibu, California, for Plaintiffs-Appellants.

Kamala D. Harris, Attorney General of California, Douglas J. Woods, Senior Assistant Attorney General, Tamar Pachter, Supervising Deputy Attorney General, Alexandra Robert Gordon (argued), Deputy Attorney General, San Francisco, California, for Defendant-Appellee.

## OPINION

KOZINSKI, Chief Judge:

Like Stephen Colbert before her, Peta Lindsay didn't want to become president of the United States. She just wanted to run. To that end, she sought a place on the 2012 presidential primary ballot for the Peace and Freedom Party. She properly filed her nomination papers and, as required by California law, was generally recognized as a candidate for that party. *See* Cal. Elec. Code § 6720. (In her brief, Lindsay refers to Election Code section 6041. But that section pertains to the Democratic Party. We therefore assume that she means to refer to section 6720, which pertains to the Peace and Freedom Party.)

Nevertheless, when California Secretary of State Debra Bowen distributed the certified list of the candidates generally recognized to be seeking their parties' nominations, Lindsay discovered that her name wasn't on it. *See* Cal. Elec. Code §§ 6722, 6951. At twenty-seven years of age, Lindsay wasn't constitutionally eligible to *be* president. *See* U.S. Const. art. II, § 1, cl. 5. But was she eligible to *run*?

Lindsay claims she was, and so brings suit seeking vindication of her rights under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment and the Twentieth Amendment. She is joined by one of her supporters and the Peace and Freedom Party. For convenience, we will generally refer only to her.

The district court dismissed the case with prejudice and Lindsay appeals. Because the case is "capable of repetition, yet evading review," it is not moot. *See Fed. Election*

*Comm'n* v. *Wis. Right to Life, Inc.*, 551 U.S. 449, 462–64 (2007).

## I. First Amendment Claims

Although regulation of who can appear on the ballot "inevitably affects" free speech, association and voting rights, *Anderson* v. *Celebrezze*, 460 U.S. 780, 788 (1983), we uphold restrictions that impose only a "[l]esser burden[]" on those rights so long as they are reasonably related to the state's "important regulatory interest[]," *Timmons* v. *Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (internal quotation marks omitted).

Age requirements, like residency requirements and term limits, are "neutral candidacy qualification[s] . . . which the State certainly has the right to impose." *Bates* v. *Jones*, 131 F.3d 843, 847 (9th Cir. 1997) (en banc); *see also Rubin* v. *City of Santa Monica*, 308 F.3d 1008, 1014 (9th Cir. 2002) (restrictions aren't severe when they are "generally applicable, even-handed, [and] politically neutral"). Distinctions based on undisputed ineligibility due to age do not "limit political participation by an identifiable political group whose members share a particular viewpoint, associational preference or economic status." *Bates*, 131 F.3d at 847 (quoting *Anderson*, 460 U.S. at 793) (internal quotation marks and alterations omitted). They simply recognize the lines that the Constitution already draws. Any burden on Lindsay's speech and association rights is therefore minimal.

This burden is amply justified by California's asserted interest in "protecting the integrity of the election process and avoiding voter confusion." *See Timmons*, 520 U.S. at

364–65. Lindsay alleges neither that Secretary Bowen prevented other Peace and Freedom Party candidates from running nor that she interfered with Lindsay's or the party's ability to advocate for the party's platform. *See Anderson*, 460 U.S. at 791 n.12. She argues primarily that Secretary Bowen's refusal to place her on the presidential primary ballot denied her and her party the "right to present and support an alternative to the two-party system." But there is neither any "fundamental right to run for public office," *NAACP* v. *Jones*, 131 F.3d 1317, 1324 (9th Cir. 1997), nor any right "to use the ballot itself to send a particularized message," *Timmons*, 520 U.S. at 363. That "a particular individual may not appear on the ballot as a particular party's candidate does not severely burden that party's associational rights." *Id*. at 359. Lindsay and the party have ways of promoting their policy agenda other than placing Lindsay's name on the ballot, such as encouraging voters to write her name in. Moreover, the voting rights of Lindsay's supporter were not severely burdened by Lindsay's exclusion from the ballot. *See Burdick* v. *Takushi*, 504 U.S. 428, 440 n.10 (1992).

Lindsay also claims that the Secretary lacked authority to keep her off the primary ballot. She points to California Election Code section 6720, which states that the Secretary "shall place the name of a candidate upon the Peace and Freedom Party presidential preference ballot when [he] has determined that the candidate is generally advocated for or recognized throughout the United States or California as actively seeking the presidential nomination." Lindsay is free to bring such a claim in state court but it has no bearing on this lawsuit, which is based entirely on federal law.

Nor is this a case where a candidate's qualifications were disputed.  Everyone agrees that Lindsay couldn't hold the office for which she was trying to run.  Lindsay therefore could never have been a legitimate contender for the presidency, and there's no doubt that "a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies."  *See Bullock* v. *Carter*, 405 U.S. 134, 145 (1972).  Holding that Secretary Bowen couldn't exclude Lindsay from the ballot, despite her admission that she was underage, would mean that anyone, regardless of age, citizenship or any other constitutional ineligibility would be entitled to clutter and confuse our electoral ballot.  Nothing in the First Amendment compels such an absurd result.

## II. Equal Protection Claim

Lindsay claims an Equal Protection Clause violation; she says that she "*is* similarly situated to the other candidates . . . because she qualified for and won the support of the Peace and Freedom Party."  To the extent this is an argument that state officials can't draw distinctions between candidates who are clearly ineligible to become president and those who aren't, it fails:  "The Constitution does not require things that are different in fact or opinion to be treated in law as though they were the same."  *Plyler* v. *Doe*, 457 U.S. 202, 216 (1982) (internal quotation marks and alterations omitted); *see also Am. Party of Tex.* v. *White*, 415 U.S. 767, 781 (1974). Those who can't legally assume office, even if elected, are undeniably different from those who can.  Because including ineligible candidates on the ballot could easily cause voter confusion, treating ineligible candidates differently from eligible ones is rationally related to the state's interest in maintaining the integrity of the election process. *See Ventura*

*Mobilehome Cmtys. Owners Ass'n* v. *City of San Buenaventura*, 371 F.3d 1046, 1055 (9th Cir. 2004).

Lindsay also seems to argue that Secretary Bowen used age as a mere pretext to "singl[e] out a minor party and a particular candidate, the only African American female candidate for the Presidency . . . and [that the Secretary] exercised no such usurped authority, for other candidates for the Presidency, such as major party primary candidates and other similarly situated individuals." But she offers no proof, beyond conclusory allegations of discrimination, that the Secretary had any such ulterior motive. *See Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555–56 (2007). While claiming that similarly situated candidates were treated differently than she was, Lindsay can't identify a single person who appeared on the California ballot despite admitting that he wasn't qualified. *See N. Pacifica LLC* v. *City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008); *Ventura*, 371 F.3d at 1055.

Lindsay points to 2008 presidential candidate John McCain, who some considered to be ineligible to hold office because he was born outside the United States. But, at worst, McCain's eligibility was disputed. He never *conceded* that he was ineligible to serve, and it was generally assumed that he could. The Secretary does not violate the Equal Protection Clause by excluding from the ballot candidates who are indisputably ineligible to serve, while listing those with a colorable claim of eligibility. Because those two groups stand on a different footing, the Secretary is entitled to exclude the former while including the latter. *See Robinson* v. *Bowen*, 567 F. Supp. 2d 1144, 1146–47 (N.D. Cal. 2008); *Keyes* v. *Bowen*, 117 Cal. Reptr. 3d 207, 214–16 (Cal. Ct. App. 2010).

### III.    Dormant Twentieth Amendment Claim

The Twentieth Amendment provides that, "if the President elect shall have failed to qualify, then the Vice President elect shall act as President until a President shall have qualified; and the Congress may by law provide for the case wherein neither a President elect nor a Vice President elect shall have qualified."  U.S. Const. amend. XX, § 3. Lindsay argues that this amendment prohibits states from determining the qualifications of presidential candidates.

It's far from clear that the Twentieth Amendment gives rise to a private right of action.  *Cf. Golden State Transit Corp.* v. *City of L.A.*, 493 U.S. 103, 107 (1989) (Supremacy Clause doesn't create any enforceable rights).  But, even if it does, nothing in the Twentieth Amendment states or implies that Congress has the *exclusive* authority to pass on the eligibility of candidates for president.   The amendment merely grants Congress the authority to determine how to proceed *if* neither the president elect nor the vice president elect is qualified to hold office, a problem for which there was previously no express solution.  *See* 75 Cong. Rec. 3831 (1932) (statement of Rep. Cable).  Candidates may, of course, become ineligible to serve after they are elected (but before they start their service) due to illness or other misfortune.  Or, a previously unknown ineligibility may be discerned after the election.   The Twentieth Amendment addresses such contingencies.  Nothing in its text or history suggests that it precludes state authorities from excluding a candidate with a known ineligibility from the presidential ballot.

**AFFIRMED.**