Filed 8/27/14  Noonan v. Bowen CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| EDWARD NOONAN et al., | C071764 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201280001048CUWMGDS) |
| v. | |
| DEBRA BOWEN, as Secretary of State, etc., et al., | |
| Defendants and Respondents. | |

In *Keyes v. Bowen* (2010) 189 Cal.App.4th 647 (*Keyes*), this court held that the California Secretary of State "does not have a duty to investigate and determine whether a presidential candidate meets [the] eligibility requirements of the United States Constitution."  (*Id.* at p. 651-652.)  Hardly a year after the *Keyes* decision, plaintiffs Edward C. Noonan and Pamela Barnett (among others) commenced this mandamus proceeding, seeking a writ of mandate to require defendant Debra Bowen, as Secretary of State, to "bar ballot access of ineligible declared candidates for office of President of the United States . . . at the 2012 election cycle with restraint of fund raising . . . ."  Like the

1

plaintiffs in *Keyes*, Noonan and Barnett based their petition on the assertion that Bowen "has a ministerial duty to verify the eligibility of those who are running for the office of President of the United States." Noonan and Barnett also asserted in their petition that Election Code section 6901 is unconstitutional to the extent it requires the Secretary of State to place presidential candidates' names on the ballot without vetting their qualifications.[1]

The trial court sustained the demurrers of Bowen and of defendants President Barak Obama and Obama for America without leave to amend. Because neither Noonan nor Barnett has shown any error in that ruling, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2012, Noonan and Barnett (and others who have not sought relief on appeal) filed a petition for writ of mandate seeking to compel Bowen to "bar ballot access of ineligible declared candidates for office of President of the United States . . . at the 2012 election cycle with restraint of fund raising . . . ." Bowen and Obama demurred. In response, Noonan and Barnett filed an amended petition.

In their amended petition, Noonan and Barnett asserted that Bowen had a "duty . . . to determine whether President Obama or any other presidential candidate meets the eligibility requirements of the U.S. Constitution."[2] They further asserted that

---

[1] "Whenever a political party, in accordance with Section 7100, 7300, 7578, or 7843, submits to the Secretary of State its certified list of nominees for electors of President and Vice President of the United States, the Secretary of State shall notify each candidate for elector of his or her nomination by the party. *The Secretary of State shall cause the names of the candidates for President and Vice President of the several political parties to be placed upon the ballot for the ensuing general election.*" (Elec. Code, § 6901, italics added.)

[2] The United States Constitution provides that "[n]o person except a natural born citizen, or a citizen of the United States, at the time of the adoption of this Constitution, shall be eligible to the office of President." (U.S. Const., art. II, § 1, cl. 5.)

2

insofar as Election Code section 6901 "directs that the [Secretary of State] **must** place on the ballot the names of the several political parties' candidates," that statute is unconstitutional.

Bowen and Obama demurred again. The trial court sustained the demurrers without leave to amend. The court concluded that the petition "fail[ed] to state facts sufficient to constitute a cause of action because [the petition] requires the Court either to make a factual determination as to whether President Obama is eligible to hold or run for the office of President of the United States, or to find that the Secretary of State has a mandatory duty to make that determination. Such a determination is a matter that is beyond the jurisdiction of this Court, and is a matter that is not within the duties of the Secretary of State." In reaching this conclusion, the court relied largely on this court's decision in *Keyes*. The trial court also concluded that Election Code section 6901 is not unconstitutional because that "contention is based on the theory that the Secretary of State has a legal duty, in this instance one that is alleged to be of constitutional origin, to determine the eligibility of candidates for President of the United States before their names may be placed on the ballot. As discussed above, no such legal duty exists."

From the resulting judgment of dismissal, Noonan and Barnett each timely appealed.

DISCUSSION

On appellate review of the sustaining of a demurrer without leave to amend, "[i]t is plaintiffs' burden to show either that the demurrer was sustained erroneously or that the trial court's denial of leave to amend was an abuse of discretion." (*Keyes*, *supra*, 189 Cal.App.4th at p. 655.) Because neither Noonan nor Barnett asserts any error in the denial of leave to amend, the sole question before us is whether they have carried their

---

Noonan and Barnett's position is that President Obama is not a " 'natural born citizen' " because his father was not a United States citizen.

3

burden of showing that the demurrers were sustained erroneously. To carry that burden, they must persuade us that the Secretary of State *does*, in fact, have a duty to investigate and determine whether a presidential candidate meets the eligibility requirements of the United States Constitution.[3] (See *Keyes*, at p. 657 [issuance of writ of mandamus requires " 'a clear, present and usually ministerial duty on the part of the respondent' "].) They have not done so.

As we noted at the outset of this opinion, this court resolved the question of whether the Secretary of State has such a duty in *Keyes*, concluding that no such duty exists. (*Keyes*, *supra*, 189 Cal.App.4th at p. 651.) Neither Noonan nor Barnett persuades us that *Keyes* was wrongly decided.

For his part, Noonan does not mention, let alone discuss, *Keyes* in his opening brief. This is an unconscionable omission, given that: (1) the trial court expressly rested its decision on *Keyes*; and (2) Noonan is represented on appeal by an attorney from the same organization (United States Justice Foundation) that represented the unsuccessful plaintiffs in *Keyes*. (See *Keyes*, *supra*, 189 Cal.App.4th at p. 651.)

In his reply brief, Noonan, for the first time, "contests the correctness of" *Keyes*. We could treat this contention as "forfeited because it was raised for the first time in [the] reply brief without a showing of good cause." (*Keyes*, *supra*, 189 Cal.App.4th at p. 660.) We choose not to do so, however. Instead, we consider Noonan's belated challenge to *Keyes* and reject it on its merits.

---

**3** Given the nature of the constitutional challenge to Elections Code section 6901, it is not separate from the question of whether the Secretary of State has the duty Noonan and Barnett claim because, as the trial court recognized, the statute would be unconstitutional only if it interfered with a constitutionally-based duty on the part of the Secretary of State to determine the eligibility of presidential candidates. Because Noonan and Barnett have failed to demonstrate the existence of any such duty, they have necessarily failed to show that Elections Code section 6901 is unconstitutional.

4

In support of his assertion that "[t]he Secretary of State has the duty and authority to examine the qualifications of candidates for every office subject to election in the State of California," Noonan cites Government Code section 12172.5.[4]  As we noted in *Keyes*, however, that statute provides only that "[t]he Secretary of State is charged with ensuring 'that elections are efficiently conducted and that state election laws are enforced . . . .' " (*Keyes*, *supra*, 189 Cal.App.4th at p. 658, quoting Gov. Code, § 12172.5, subd. (a).) Nothing in that statute imposes, explicitly or implicitly, a clear and present duty on the Secretary of State to investigate and determine whether a presidential candidate meets the eligibility requirements of the United States Constitution.  (See *Keyes*, *supra*, 189 Cal.App.4th at p. 659.)

Specifically addressing our decision in *Keyes*, Noonan argues that "this Court did not determine who had the duty to verify eligibility, finessing the issue by stating 'presumably [the political parties] will conduct the appropriate background check . . . .' " (*Keyes*, *supra*, 189 Cal.App.4th at p. 652.)  He then argues that "the matter of eligibility in office of the President of the United States is too serious a matter to be left to a vague 'presumption' " and that "[t]he California state [L]egislature is duty bound by Article II, Section 1, Clause 5 of the U.S. Constitution to ensure that presidential electors are chosen, and that those electors are committed to voting only for a person who meets the qualifications for the office of the President as spelled out in Article II, Section 1, Clause [5]."  Finally, he asserts that "[t]his responsibility has been vested in the California Secretary of State," and he once again cites Government Code section 12172.5

Noonan's assertions that "[t]he California state [L]egislature is duty bound by Article II, Section 1, Clause [5] of the U.S. Constitution to ensure that presidential electors . . . are committed to voting only for a person who meets the qualifications for

---

[4]    Noonan repeatedly misidentifies the statute as *Elections* Code section 12172.5.

the office of the President as spelled out in [that] [c]lause" and that "[t]his responsibility has been vested in the California Secretary of State" are mere ipse dixit, unsupported by any principled argument or authority. As we stated in *Keyes*, "[t]he presidential nominating process is not subject to each of the 50 states' election officials independently deciding whether a presidential nominee is qualified, as this could lead to chaotic results. Were the courts of 50 states at liberty to issue injunctions restricting certification of duly-elected presidential electors, the result could be conflicting rulings and delayed transition of power in derogation of statutory and constitutional deadlines. Any investigation of eligibility is best left to each party, which presumably will conduct the appropriate background check or risk that its nominee's election will be derailed by an objection in Congress, which is authorized to entertain and resolve the validity of objections following the submission of the electoral votes." (*Keyes*, *supra*, 189 Cal.App.4th at p. 660.) Noonan has offered no argument or authority that dissuades us from that conclusion.

As for Noonan's suggestion in his opening brief that the Secretary of State has a duty to investigate and determine whether a presidential candidate meets the eligibility requirements of the United States Constitution because some Secretaries of State have, in fact, done so, we find no merit in that argument. As we stated in *Keyes*, just because a Secretary of State has "excluded a candidate who indisputably did not meet the eligibility requirements does not demonstrate that the Secretary of State has a clear and present ministerial duty to investigate and determine if candidates are qualified before following the statutory mandate to place their names on the general election ballot." (*Keyes*, *supra*, 189 Cal.App.4th at p. 660.) Noonan asserts that "[s]uch unfettered discretion is unconstitutional," but he offers no authority or argument in support of that assertion. It has been said that "[c]ounsel cannot, with nonchalant air, declare without argument that error was committed and by so doing transfer the labor of research from his own shoulders to the appellate tribunal." (*People v. Titus* (1927) 85 Cal.App. 413, 418.) That

6

observation applies here to Noonan's assertion that giving the Secretary of State discretion to investigate and determine if presidential candidates are qualified would be unconstitutional. Because Noonan does not support his assertion with argument or authority, we decline to consider it further.

For her part, Barnett offers arguments that are no more persuasive than Noonan's (to the extent we can even figure out what her arguments are). First, she contends the trial court added a requirement to the Elections Code in holding that she and Noonan could prevail only "if the State failed to perform a ministerial duty." She contends that Elections Code section 13314 gave the court the power to grant them relief "even without the State having a ministerial duty unfilled." We disagree.

Elections Code section 13314 provides in relevant part as follows:

"(a)(1) An elector may seek a writ of mandate alleging that an error or omission has occurred, or is about to occur, in the placing of a name on, or in the printing of, a ballot, sample ballot, voter pamphlet, or other official matter, or that any neglect of duty has occurred, or is about to occur.

"(2) A peremptory writ of mandate shall issue only upon proof of both of the following:

"(A) That the error, omission, or neglect is in violation of this code or the Constitution.

"(B) That issuance of the writ will not substantially interfere with the conduct of the election."

As we have explained, Noonan and Barnett sought a writ of mandate here on the theory that the Secretary of State has a duty to investigate and determine whether a presidential candidate meets the eligibility requirements of the United States Constitution before allowing the candidate's name to be placed on the ballot. In essence, then, their claim was based on the assertion that a neglect of duty was about to occur insofar as Bowen was going to allow President Obama's name to be placed on the ballot in the 2012

7

election cycle without investigating or determining his eligibility for the office. Of course, to prevail on that claim they had to show that such a duty existed, which is consonant with the general requirement that a writ of mandamus will not issue unless the respondent has a clear, present and usually ministerial duty to act. (See *Keyes*, *supra*, 189 Cal.App.4th at p. 657.) Thus, Barnett's assertion that the trial court added a requirement to the Elections Code is without merit.

Barnett next asserts that the trial court "failed to treat OBAMA's admission that his legal father is a British Subject as an *admission against interest*." The issue in this case, however, is *not* whether President Obama is, in fact, a "natural born citizen" within the meaning of clause 5 of article II of the United States Constitution. The issue is whether the Secretary of State had a duty to investigate and determine whether President Obama is a natural born citizen before allowing his name to be placed on the ballot in the 2012 election cycle. Having failed to show that any such duty exists, Noonan and Barnett were not entitled to relief in this proceeding, and Barnett's argument about President Obama's qualifications -- which take up much of her brief -- are entirely beside the point.

Barnett next appears to make some sort of equal protection argument based on the fact that Bowen excluded a presidential candidate from the Peace and Freedom Party from the ballot in 2012 because she was eight years shy of the minimum age (35) to serve as President, and that action was upheld by a federal district court (in an unpublished decision). This argument is not sufficiently developed for us to address, as Barnett fails to cite to even a single authority on the principles of equal protection and fails to coherently articulate why the different treatment of President Obama and this other candidate violated those principles.

We will note, however, that "[t]o prevail on an equal protection of law challenge, a person must show the state has adopted a classification that affects in an unequal manner two or more groups that are similarly situated for purposes of the law that is

8

challenged." (*Ziehlke v. Valverde* (2011) 191 Cal.App.4th 1525, 1534.) Thus, to prevail here, Barnett would have to show that President Obama, who has admitted that his father was not a United States citizen, is similarly situated -- for purposes of determining eligibility for the office of President -- with a person who has admitted she is 27 years old. Barnett has not made, or even attempted to make, this showing. Moreover, Barnett has not shown how establishing an equal protection violation would entitle her to the relief she sought in this proceeding, which was primarily a writ of mandate to require the Secretary of State to investigate and determine the eligibility of candidates for the office of President before allowing their names to be placed on the ballot. Thus, Barnett's equal protection argument is without merit.

In a decision that came out after the completion of briefing in this matter -- *Lindsay v. Bowen* (9th Cir. 2014) 750 F.3d 1061 -- the Ninth Circuit Court of Appeals affirmed the dismissal of the federal case brought by the 27-year-old Peace and Freedom Party candidate because it was undisputed the candidate was not constitutionally eligible to be President because she too was young. *Lindsay* stands for the proposition that it does not violate the federal Constitution -- specifically, the First Amendment, the equal protection clause, and the Twentieth Amendment -- for the California Secretary of State to refuse to place on the ballot the name of a presidential candidate who admittedly is not qualified to serve as President.

The *Lindsay* decision does not support the arguments of Noonan and Barnett here because the question in this case is not whether the California Secretary of State has the power to exclude from the ballot the name of a presidential candidate who admittedly is not qualified to serve, but rather whether the Secretary of State has a *ministerial duty* to investigate the qualifications of presidential candidates and to exclude those whom the Secretary determines do not qualify. As we have explained, the answer to the latter question is "no." The Secretary of State may have the power to exclude unqualified candidates from the ballot -- at least where the lack of qualification is patent and

9

undisputed -- but that does not translate into a duty to investigate and determine qualifications, particularly when the matter of the qualification is in dispute.

To the extent Barnett's brief contains additional arguments, they are not sufficiently distinct from the foregoing arguments to require separate discussion, or they are simply not sufficiently comprehensible to allow for cogent discussion in this opinion. The bottom line is that neither Noonan nor Barnett has carried the burden of showing that the trial court's decision was in error.

DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)


                                                            ROBIE            , J.



We concur:



      RAYE            , P. J.



      MAURO          , J.