Filed 8/25/22 Conservatorship of John D. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Conservatorship of the Person of JOHN D. II. | |
| DEBORA D., Petitioner and Appellant, v. JOHN D., Petitioner and Respondent, JOHN D. II, etc., Objectors and Respondents. | G059954 (Super. Ct. No. 30-2019-01104251) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kim R. Hubbard, Judge. Affirmed. Appellant's motion to augment denied.

Debora D., in pro. per., for Petitioner and Appellant.

John D., in pro. per., for Petitioner and Respondent.

No appearance for Objectors and Respondents John D. II, etc.

*       *       *

Debora D. and John D. are the parents of John D. II (J.J.), a young adult who has severe autism and is unable to provide for his own medical, educational, and welfare needs. After a significant period of disagreement regarding J.J.'s education, Debora and John[1] filed cross-petitions to be appointed as J.J.'s conservator with the ability to make educational decisions on his behalf. The court granted John's petition, appointing John and Debora as limited co-conservators, but giving John exclusive power to make educational decisions.

Debora appeals, although her opening brief contains no properly developed arguments. To the extent we can discern her complaint, it is that the court erred by appointing a guardian ad litem (GAL) to represent J.J.'s interests in the litigation, without her agreement. There is no merit in that contention, and we affirm the judgment. We also deny Debora's motion to augment the record with a copy of the judgment dissolving her marriage to John, which is irrelevant to both the appointment of a GAL and the establishment of a conservatorship.

**FACTS**

John and Debora are the parents of J.J., who was 17 when this case was initiated in October 2019. As Debora explained, "JJ has severe autism, is not able to communicate effectively, and is unable to provide for his medical, educational or welfare needs."

---

[1] Since both parties have the same last name, we use their first names for purposes of clarity. We intend no disrespect.

2

In the fall of 2015, John and Debora agreed with the Los Alamitos School District (the District) on an Individual Education Plan (IEP) for J.J. The District is obligated to reassess students regularly and update their plans as appropriate; however, Deborah did not agree to any proposed update to J.J.'s IEP after March of 2016.

In November 2017, Debora refused to have J.J. assessed by the District. The District sought a "Due Process" administrative review, seeking permission to assess J.J. without Debora's consent. An expert for the District "felt it was imperative for the school district to assess J.J. in order to move forward appropriately with identifying an individualized education plan for him. And [John] had consented, but [Debora] did not. And their order at that time required that both parents provide consent in order for [the District] to move forward." The District received permission to move forward with a May 2019 assessment plan without Debora's consent.

Although John was initially inclined to defer to Debora's experience in education, he became convinced over time that her inability to agree to an updated plan, and her failure to cooperate with the District's efforts to resolve their disputes through an administrative proceeding, were harming J.J.'s opportunity to receive an appropriate education.

On October 15, 2019, John filed a petition to be appointed J.J.'s limited conservator. His primary concern was that J.J.'s opportunity for public education was being thwarted because Debora repeatedly refused to agree to an IEP and would not negotiate with the District on any proposed compromise.

Deborah opposed John's petition for appointment of a conservator, and on December 17, 2019, she filed her own petition to be appointed J.J.'s conservator. Debora's position was that because she has significant experience in education—holding a master's degree and working for a school district and also for a company that serves special needs adults—she knows "what J.J. needs and what this is supposed to look like and how it's supposed to be prepared."

In October 2019, the court appointed the Public Defender to represent J.J. In October 2020, the court appointed Cheryl Walsh to serve as the GAL for J.J.

The trial on both petitions was scheduled to commence in early February 2021; Debora did not appear. The court entered judgment against her, but later set it aside and scheduled a new trial date.

When trial was again set to commence remotely on February 22, 2021, the court found it had not received exhibit binders from Debora; Debora also acknowledged she had not provided copies of those binders to the GAL.[2] The court then ordered Debora to provide her exhibit binders to both the court and the GAL by 3:00 p.m. that day, warning her that if the GAL did not have the exhibits by 3:00 p.m., Debora would not be able to offer any exhibits at trial. The court continued the trial to the following day, and informed Debora the trial would commence "regardless of whether or not her exhibits are received."

When the trial commenced remotely the next morning, Debora again challenged the GAL. She stated she had "remove[d] former counsel for ineffective representation . . . when this appointment happened." The court reiterated that it had the authority to "appoint a guardian ad litem in any situation where we have battling parents over a child to determine what is in the best interest of the child or of . . . the independent adult, which is what we have."

The court also informed Debora that it had not received her exhibits and reminded her that she had been warned the day before that if her exhibits were not

---

[2]     Debora claimed she paid to have the exhibits delivered to the court by 8:00 a.m.; the court reminded her she was required to lodge the exhibits five days before the trial. As to the GAL, Debora appeared to justify her failure to serve on the basis she was objecting to the GAL's participation in the case. Debora asserted the GAL must be removed from the case because Debora had not "stipulated" to the appointment of any third party to represent J.J.'s interests. The court explained that its appointment of a GAL did not require her stipulation and she had no standing to remove the GAL.

delivered by 3:00 p.m. that day, they would not be considered at trial. The court then explained to Debora, citing many examples, that it had "bent over backwards to try to make sure [she had her] day in court." The court concluded, "we are done. You're taking advantage of the system. You're taking advantage of the court. It ends now. We are proceeding to trial right now."

John's first two witnesses were Debora's mother, who testified that Debora had not allowed her to visit J.J., and the father of another of Deborah's sons, who testified that Debora had also resisted having their son assessed for learning problems.

John's third witness was Grace Delk, a director of special education and mental health at the District. She testified to the District's difficulties in reaching any agreement with Debora about J.J.'s education plan. She opined that Debora's conduct was "delaying J.J.'s IEP development."

Delk explained that J.J.'s IEP goals from 2015 were not appropriate for his current age, and testified "it's imperative that we're able to update goals and provide supports and services that will more align with when he transitions out of the school district at the age of 22."

Delk stated she did not feel the District would be able to work with Debora going forward to create a new IEP. By contrast, the District had been able to work with John to come up with a new IEP for J.J. and Delk felt comfortable continuing to work with John in the future.

John's final witness was Dr. Kim Huynen, a psychologist who provided behavior intervention and consultation at J.J.'s school. She testified regarding efforts to develop a new IEP for J.J., explaining that although Debora was asked several times what she was looking for in terms of goals and services, she gave them no specific information and no clear answers. She added Debora delayed, cancelled, or refused to attend IEP meetings over the past several years.

5

Huynen stated the delay in developing goals has impacted J.J.'s ability to become more self-sufficient by the time he ages out of the District program. She explained that although Debora had expressed a preference for J.J. to be transferred to Los Alamitos High School, no such transfer could be considered until the "whole IEP team has . . . an approved set of goals."

Debora's first witness was the coach of a baseball program that J.J. participates in. The coach testified briefly about J.J.'s participation in the program and Debora's support of it. Her second witness was a friend she had known since elementary school, who also knew all three of her sons and sometimes helped out by picking J.J. up from school and spending time with him.

Both John and Debora testified, and each was given the opportunity to cross-examine the other. During her testimony, Debora acknowledged she did not want to change J.J.'s 2015 IEP goals because his goals "generate services that J.J. currently has, which are ADA, speech, OT, a one-to-one, and where he has a teacher and a certified teacher working with him as well giving—giving him instructions during that time. . . . And these goals that J.J. currently has are more appropriate than anything that's offered."

The GAL also participated in the trial; she cross-examined several witnesses but called no witnesses of her own. The GAL acknowledged in her closing argument that John and Debora cared deeply about J.J., and they both had been very involved in his education. However, she believed they were no longer able to work together in making decisions about J.J.'s education. She indicated J.J. needed an updated IEP, and the District witnesses had made clear they were unable to work with Debora to achieve that goal. If the court was inclined to appoint John and Debora as co-conservators, she suggested giving John sole authority in the area of education.

The court agreed with the GAL's suggestion. After finding that a limited conservatorship of J.J.'s person was the least restrictive alternative to protect his interests, and that both parents were suitable and qualified for appointment as conservator, the

court granted the conservatorship petition filed by John, and denied the petition filed by Debora. The court then appointed both John and Debora as limited co-conservators of J.J.'s person, giving them shared power to (1) fix his residence, (2) access his confidential records, (3) contract, and (4) give/withhold medical treatment (albeit with a requirement to notify the Public Defender before any withholding of life-sustaining treatment). The court gave John the exclusive power to make decisions regarding J.J.'s education and informed him if Debora failed to cooperate, he could file a petition or an ex parte application to seek her removal.

## DISCUSSION

### 1.     *Standards of Review*

It is well settled that a judgment of the trial court is presumed to be correct; the appellant has the burden to prove error by presenting legal authority to support each argument made, along with an analysis of the pertinent facts supported by citations to the appellate record. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785; *Boyle v. CertainTeed Corp*. (2006) 137 Cal.App.4th 645, 649 [on appeal "the party asserting trial court error may not . . . rest on the bare assertion of error but must present argument and legal authority on each point raised"].) If the appellant fails to do those things, the argument may be deemed forfeited.

"[T]he appellant must present each point separately in the opening brief under an appropriate heading, showing the nature of the question to be presented and the point to be made; otherwise, the point will be forfeited." (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656; Cal. Rules of Court, rule 8.204(a)(1)(B).)

Debora was advised of those rules in a prior opinion of this court, which arose out of her dispute over the custody of a different son with that son's father. "[N]one of mother's ostensible legal arguments are supported by citation to authority, nor are they placed under discrete headings setting out the issues, as required by California

7

Rules of Court, rule 8.204(a)(1)(B). When a party fails to cite proper legal authority to support his or her legal contentions, this court need not consider them. [Citations.] [¶] In fact, we could consider the entire appeal forfeited for mother's failure to follow the rules of court. [Citation.] Her decision to proceed in propria persona does not relieve her of the obligation to follow those rules." (*D.M. v. D.D.* (June 23, 2017, G051825 [nonpub. opn.].)

Despite that warning, Debora's opening brief in this appeal again fails to comply with the rules. The "Argument" section of Debora's opening brief contains a single paragraph; it lacks any headings, analysis, or authorities. It states in full: "The court officers believe and operate outside procedure in ignorance of the Controlling Law of the Individuals with Disabilities Education Act; therefore, position themselves that a signature and agreement to an offer is an automatic advancement. The district court and court officers do not demonstrate they are savvy of the Special Education procedure which has and is posing a threat to the Proposed Conservatee." That is not a legal argument.

2.    *Appointment of GAL*

To the extent we can extract any claim of error from other parts of Debora's opening brief, it seems her primary complaint focuses on the trial court's appointment of a GAL for J.J. without her permission. She also suggests the court allowed the GAL to decide the case for it.

In the "Statement of Appealability" section of her brief, Debora states: "This is an appeal from a judg[]ment following a limited conservatorship trial where judg[]ment was made at the recommendation of a GAL to terminate Appellant's Education Decision Making for Her Son without cause, legal, lawful foundation, with joint conservatorship in all other facets." Debora claims (again without citation to the record) that "[t]he GAL was requested by [John] under no compelling circumstance to make a decision regarding conservatee's education." She also states that she "has

8

maintained objection to any 3rd part[ies], including a GAL [and] did not stipulate to the Appointment of a GAL in this matter."[3]

Debora cites no authority to support her implied assertion that a court cannot appoint a GAL to represent an 18-year-old disabled person in litigation to establish a conservatorship when that person's parents cannot agree on how to move forward. We know of none.

In fact, this appears to present a model situation for a GAL. Code of Civil Procedure section 372, subdivision(a)(1), provides that "[w]hen a minor, a person who lacks legal capacity to make decisions, or a person for whom a conservator has been appointed is a party, that person shall appear either by a guardian or conservator of the estate or by a guardian ad litem appointed by the court in which the action or proceeding is pending, or by a judge thereof, in each case. A guardian ad litem may be appointed in any case when it is deemed by the court in which the action or proceeding is prosecuted, or by a judge thereof, expedient to appoint a guardian ad litem to represent the minor, person lacking legal capacity to make decisions, or person for whom a conservator has been appointed, notwithstanding that the person may have a guardian or conservator of the estate and may have appeared by the guardian or conservator of the estate."

"A trial court has discretion to accept or deny an application for appointment of a guardian ad litem [citation]. In the absence of a conflict of interest, however, the appointment is usually made on application only and involves little exercise of discretion." (*J.W. v. Superior Court* (1993) 17 Cal.App.4th 958, 964, fn. 5.)

---

[3] Debora also complains that in an August 23, 2021 order, the trial court allowed John to "take full custody of [her] son" which "cut[] off [her] primary resource as [J.J.'s] Full Time IHSS Care Provider since 2008 and [his] Social Security Payee since 2005, allowing [John] to commandeer all areas of the resource." However, that alleged order came nearly six months after Debora filed her March 1, 2021 notice of appeal in this case. We therefore cannot consider it.

9

As explained by our Supreme Court in *In re Marriage of Higgason* (1973) 10 Cal.3d 476, 484, overruled on other grounds in *In re Marriage of Dawley* (1976) 17 Cal.3d 342, 352, "A guardian ad litem . . . is not a party to an action or proceeding, but only a representative of a party, just as an attorney of record is not a party."

In this case, J.J. is the subject of his parents' competing conservatorship petitions, which arise out of their different beliefs about how he would be best served by any future educational plan. We are convinced that both parents are acting in good faith, that they care deeply about J.J., and they both want what is best for him. The court has to allow for the possibility that their respective positions may be colored by their own self-interests or their conflict with each other. Under those circumstances, it is appropriate for the court to appoint a GAL to represent J.J.'s interests. We find no error in the appointment.

There is no evidence to support Debora's suggestion that the GAL was given too much authority over the outcome of the case. The GAL must advocate for the outcome she feels is best for J.J., and she did so. We see nothing nefarious in the court agreeing with the GAL's recommendation.

3. *Other Issues*

In the "Conclusion" section of her brief, Debora offers additional complaints, including the court's refusal to accept her trial exhibits after she had failed to comply with any of the court's deadlines for filing them. Debora cites numerous facts in an effort to demonstrate she attempted to get the exhibits filed, but she supports none of those facts with citations to the record, and our own review of the record does not reveal any such support.

Debora also contends that counsel who represented her during part of the trial court proceedings was ineffective. Once again, she fails to support her allegations with any citation to the record. Nor does she cite any authority for the proposition that

10

ineffective representation by the counsel she chose would entitle her to any relief on appeal.  Again, we know of none.

## DISPOSITION

The judgment is affirmed.  In light of this court's issuance of a fee waiver, in the interest of justice no costs are awarded.


GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

11