[No. G035368. Fourth Dist., Div. Three. Aug. 24, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVE ERIC MACARTHUR, Defendant and Appellant.

276

## COUNSEL

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Robert M. Foster, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**IKOLA, J.**—Defendant Steve Eric MacArthur challenges his conviction for receiving stolen property. This offense requires the property be stolen or obtained by theft—i.e., taken with the intent of depriving the owner of possession for a sufficiently extended time. Here, some evidence suggested the property had been taken without the requisite intent. Thus, the court had a duty to instruct the jury sua sponte with a definition of "stolen" and "theft," including the intent requirement. We reverse.

### FACTS

The victim noticed a watch, a bracelet, and a pair of earrings worth approximately $7,000 were missing from her Newport Beach house. Her daughter, defendant's girlfriend, had often taken jewelry from the house and pawned it. Accordingly, the victim contacted a West Covina pawnshop. The pawnshop would not give her any information. She then contacted the West Covina and Newport Beach Police Departments.

Shortly thereafter, a Newport Beach police officer went to the West Covina Police Department, where defendant and his girlfriend were in custody. The officer obtained two pawn slips indicating defendant had pawned the victim's bracelet and earrings for $185. Defendant acknowledged his girlfriend had taken some jewelry from her mother, left it in his car, and asked him to pawn it. He conceded he did not obtain permission from his girlfriend's mother to pawn the jewelry. He further conceded he did not believe his girlfriend had obtained permission to take the jewelry.

But defendant maintained he did not think the jewelry was stolen. He claimed his girlfriend often had taken and pawned jewelry from her mother's house, and her mother always got the jewelry back without involving the

police. He emphasized his girlfriend asked him to pawn the jewelry for only about $100 per item so it would be easy to redeem. The district attorney charged defendant with one count of receiving stolen property. (Pen. Code, § 496, subd. (a).)[1]

At trial, the prosecution called the officer and the victim. The officer stated he had recovered all of the victim's jewelry, including the watch, from the pawnshop. The victim identified the pawned jewelry as hers. She had not given permission to her daughter or defendant to take the jewelry. But she also conceded her daughter had taken jewelry from the house and pawned it 15 or 20 times before, and she always got it back.[2]

Defendant took the stand. He testified he did not think the jewelry was stolen, or that his girlfriend needed to obtain permission from her mother to take the jewelry. He thought his girlfriend owned the jewelry because it was "family jewelry." He had seen his girlfriend pawn jewelry 10 or 15 times before: "[I]t was a regular thing that she did this."

Defendant's girlfriend also testified on his behalf. She admitted she had taken the jewelry from her mother's house. She stated she had taken jewelry from her mother's house on approximately 50 prior occasions. She thought of the jewelry as being "family jewelry." She conceded her mother "never gave me permission [to take the jewelry]. She never liked the fact I did it." But she

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] The court repeatedly interrupted the examination of the victim, resulting in confusing testimony about her consent to her daughter's actions. The court asked the girlfriend's mother, "The question was[,] has she ever taken jewelry from you without your consent, yes or no?" The witness answered, "No." In response to the prosecutor's questions, the witness conceded her daughter had taken jewelry before without her knowledge and without asking for permission. The court then interjected, "Excuse me a minute. Isn't that what I just asked you? I just asked you whether she ever took jewelry from you without your consent. Permission and consent are the same thing." The next exchange was muddled: "Yes, she has taken jewelry out of our place without me. [¶] The Court: Without permission? [¶] The Witness: Yeah, without me knowing." We doubt the court's suggestion that asking permission is the only way to obtain consent. And while the court allowed the defense to ask the witness whether she had always recovered her jewelry from the pawnshop, it refused to allow the defense to ask whether her daughter had helped her to recover it: "Q: Did [your daughter] give it back to you or did you get it yourself? [¶] The Court: You know what? That's irrelevant to this case. . . . [¶] That's—I don't want to go into other pawns because it is nonspecific as to this defendant." But whether the defendant's girlfriend had helped her mother redeem the jewelry appears relevant to whether the jewelry was stolen: i.e., taken with the intention of depriving her mother of possession for a sufficiently extended period. Because we reverse for instructional error, we need not review the propriety of the court's witness examination or the merits of its evidentiary rulings.

claimed her mother "never told me not to do it. I just did it. And she knew that I did it. When I needed money, and she wasn't around, I would do that." She explained, "I would pawn it and later tell her about it, and we would go back out and get it together, go back out and get it out of the pawn."

During closing argument, the prosecutor contended the jewelry was stolen because the girlfriend did not obtain permission from her mother before taking it. He argued, "Now, was this property stolen or obtained by theft, and did [defendant] actually know that it was stolen or obtained by theft? Clearly yes. [¶] Ladies and gentlemen, if you take something from somebody without their knowledge and without their permission, you are obtaining that by theft. You are stealing it." The prosecutor continued, "This is a case where the defendant knew that this property was taken from [the victim] without her knowledge and without her permission. And because of that the property was stolen, and he clearly knew it."

The jury found defendant guilty. The court struck an admitted prior conviction for sentencing purposes. It sentenced defendant to 16 months in prison.

## DISCUSSION

In his opening brief, defendant contended insufficient evidence showed he knew the jewelry had been stolen. We saw a more basic concern. While the court correctly instructed the jury with the elements of receiving stolen property—including that the property be stolen or obtained by theft[3]—it failed to provide any guidance to the jury for determining whether property had, in fact, been stolen or obtained by theft. We asked the parties to brief

---

[3] The court gave a modified version of CALJIC No. 14.65 to the jury: "The defendant is accused in Count 1 of having committed the crime of receiving stolen property, a violation of section 496 subdivision a of the Penal Code. [¶] Every person who receives any property which has been stolen or which has been obtained by theft knowing the property to be stolen or so obtained, or who conceals or withholds or aids in concealing or withholding property from the owner knowing the property to have been stolen or so obtained is guilty of the crime of receiving stolen property in violation of Penal Code section 496 subdivision a. [¶] In order to prove this crime, each of the following elements must be proved: One, a person received property which had been stolen or—one, a person concealed or withheld or aided in concealing or withholding property from the owner which had been stolen or obtained by theft and, two, that person actually knew the property was stolen or obtained by theft at the time he received, withheld, concealed, aided in concealing or withholding from the owner of the property." (Accord, *People v. Kunkin* (1973) 9 Cal.3d 245, 249 [107 Cal.Rptr. 184, 507 P.2d 1392] [elements of receiving stolen property].)

whether the court had a duty to instruct the jury sua sponte with a definition of "stolen property" and "theft."[4]

■ For property to be "stolen" or obtained by "theft," it must be taken with a specific intent. "California courts have long held that theft by larceny requires the intent to *permanently* deprive the owner of possession of the property." (*People v. Avery* (2002) 27 Cal.4th 49, 54 [115 Cal.Rptr.2d 403, 38 P.3d 1] (*Avery*).) An intent to *temporarily* deprive the owner of possession may suffice when the defendant intends "to take the property for so extended a period as to deprive the owner of a major portion of its value or enjoyment . . . ." (*Id.* at p. 55.) As the *Avery* court noted, taking a diamond ring for two weeks is one thing; taking fresh strawberries for two weeks is another. (*Id.* at p. 56.)

Thus, to find defendant guilty of receiving stolen property, the jury needed to determine whether the jewelry had been taken with the intent to deprive the girlfriend's mother of possession for a sufficiently extended period. (*Avery, supra,* 27 Cal.4th at p. 55.) The evidence at trial called into question whether any relevant participant had the requisite intent. Defendant testified he had seen his girlfriend pawn her mother's jewelry on 10 or 15 previous occasions—"it was a regular thing." The girlfriend testified she regularly pawned her mother's jewelry, and "later [I would] tell her about it, and we would go back out and get it together, go back out and get it out of the pawn." The girlfriend's mother stated her daughter had pawned jewelry taken from the house 15 or 20 times, but acknowledged she always recovered it. Indeed, when she noticed the jewelry was missing, she called the West Covina pawnshop.

■ Given this evidence, the court should have instructed the jury sua sponte with a definition of "stolen" and "theft." " ' 'A court must instruct sua sponte on general principles of law that are closely and openly connected with the facts presented at trial.' " (*People v. Brown* (2003) 31 Cal.4th 518, 559 [3 Cal.Rptr.3d 145, 73 P.3d 1137].) The court failed to instruct the jury that theft requires a particular intent, leaving the jury with no basis for determining whether the jewelry had been stolen—an issue raised by the evidence. The jury's only guidance as to what constitutes stolen property came from the prosecutor, who wrongly defined the term without any

---

[4] We also asked the parties to brief whether the prosecutor committed prejudicial misconduct during closing argument, and whether the court committed judicial misconduct during the examination of the girlfriend's mother. We need not reach these issues.

reference to intent. We cannot say beyond a reasonable doubt that the inadequate instructions did not contribute to defendant's conviction. (See *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]; see also *People v. Flood* (1998) 18 Cal.4th 470, 499 [76 Cal.Rptr.2d 180, 957 P.2d 869] [instructional error subject to *Chapman* review].)

The Attorney General offers little analysis to the contrary. He contends whether the girlfriend had stolen the jewelry when she took it from her mother "focuses on the wrong event[.]" Rather, the "central issue is [defendant's] conduct in pawning the items," which "transferred ownership to a third party. That act constituted the theft and the concealment of stolen property. Even if [defendant] thought he had the items lawfully prior to the pawning, when he pawned them he knew he did not have permission to sell the items."[5]

■ The Attorney General offers no support for its legal contentions. None exists. Pawning is not selling. One who pawns property does not transfer ownership to a third party. He or she *pledges* it, transferring *temporary* possession of the property and a security interest in it. (See 4 Witkin, Summary of Cal. Law (10th ed. 2005) Secured Transactions in Personal Property, § 2, p. 559; see also Fin. Code, § 21000.) The pledgor still owns the property. (See 4 Witkin, *supra*, § 2 at p. 559; see also Fin. Code, § 21002, subd. (a).) Title does not pass to the pawnbroker unless the pledgor fails to redeem the pledge by repaying the loan and any applicable charges within the specified loan period. (See 4 Witkin, *supra*, § 9 at pp. 570–571; see also Fin. Code, § 21201.) Thus, pawning property does not transfer ownership or necessarily deprive the owner of possession permanently.[6] ■ Whether defendant or his girlfriend intended to deprive her mother of possession for a sufficiently extended period is for a properly instructed jury to decide.

---

[5] Knowingly misrepresenting one's ownership interest in property to a pawnbroker is a discrete offense. (§ 484.1.) The district attorney did not charge defendant with this crime.

[6] Pawning another's property does not necessarily constitute larceny. "Whether or not the pledging or pawning of another's property . . . affects the status of the taker as guilty of larceny . . . depends on the extent to which the act of pledging or pawning the property taken negates the intent permanently to deprive the owner of his property. . . . The actual pledging or pawning seems to be regarded as neutral, the important factor being whether the accused intended to redeem the property and had the ability to do so." (Annot., Taking, and Pledging or Pawning, Another's Property as Larceny (1962) 82 A.L.R.2d 863–864, § 1 [citing cases]; accord, 2 Witkin & Epstein, Cal. Criminal Law (3d. ed. 2000) Crimes Against Property, § 23, p. 44 [whether pawning constitutes larceny depends on the defendant's intention and ability to redeem the property].)

## DISPOSITION

The judgment is reversed.

Bedsworth, Acting P. J., and Moore, J., concurred.