Filed 1/9/15  P. v. White CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

JAMES FRANCIS WHITE III,

    Defendant and Appellant.

E059488

(Super.Ct.No. SWF1301060)

OPINION

APPEAL from the Superior Court of Riverside County.  Albert J. Wojcik, Judge. Affirmed.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lise S. Jacobson, Sean M. Rodriquez and Junichi Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant James Francis White III appeals from his conviction of receiving a stolen vehicle in violation of Penal Code section 496d, subdivision (a). Defendant contends (1) the record on appeal does not contain substantial evidence that the vehicle he received was taken with the specific intent to permanently deprive the owner of title or enjoyment, and (2) that the trial court erred by not instructing the jury that theft requires the specific intent to permanently deprive. We conclude the record contains substantial evidence that the rental car defendant received was stolen, and that although the trial court erred by not instructing the jury on the definition of theft, the error was harmless. Therefore, we affirm the judgment.

## I.

## FACTS

The People charged defendant with vehicle theft with a prior (Pen. Code, § 666.5, subd. (a); Veh. Code, § 10851, count 1), and receiving a stolen vehicle (Pen. Code, § 496d, subd. (a), count 2). The People alleged for purposes of sentencing that defendant had served four prior prison terms (Pen. Code, § 667.5, subd. (b)), including a prior conviction for vehicle theft (Veh. Code, § 10851, subd. (a)), and that he had suffered two serious and violent felony convictions (Pen. Code, §§ 667, subds. (c), (e), 1170.12, subd. (c)), one for burglary and the other for attempted burglary.

*Trial Testimony*

On March 2, 2013, Judy Griffith rented a Chevrolet Cruz from Hertz Corporation for her daughter Jennifer Hummel and son-in-law Jonathan Hummel. At Jonathan's[1] request, Griffith made the rental agreement for three days and promised to return the car on March 4, 2013. However, because Jonathan was going to work late on March 4, he called Hertz and asked if he could return the rental car the next day. The rental agreement was in Griffith's name and was paid for with her credit card, and the agreement only listed Griffith and Jonathan as authorized drivers. Other than Jennifer and Jonathan, Griffith gave nobody else permission to drive the rental car.

On the morning of March 4, 2013, Jennifer drove Jonathan to work using the rental car. At the time, Joey Rivera was temporarily living with the Hummels at their Menifee home. Around 8:00 a.m., after Jennifer returned home from taking Jonathan to work, Rivera asked Jennifer if he could borrow the rental car to go visit his parole officer. Jennifer agreed to loan Rivera the rental car, but she told him to return it in an hour. Rivera told Jennifer that "even if he didn't get back in an hour he would bring it back by approximately 11:00 o'clock." Jennifer gave Rivera the key to the rental car, and Rivera left. Rivera did not return within an hour. When Jonathan came home for lunch around noon, Jennifer told him that Rivera borrowed the rental car but had not yet returned it.

---

[1] For purposes of clarity, we will refer to the Hummels by their first names. We mean no disrespect.

During the day, Jennifer tried calling Rivera several times on the telephone but he never answered. Jonathan spoke to Rivera around noon, and again later that evening, around 5:00 or 6:00 p.m., but he had no further contact with Rivera. During both phone calls, Jonathan told Rivera to bring the rental car back. When Jonathan got home from work later that evening, Rivera had still not returned the rental car. Jonathan then contacted Hertz and asked them to activate the OnStar[2] system to locate the rental car. Jonathan told Hertz that Griffith took the rental car and that she was lost. He did not tell Hertz that Rivera took the car because he did not want to raise an alarm that the car might have been stolen. As far as Hertz was concerned, Rivera was not supposed to be driving the rental car, and Jonathan did not give Rivera permission to borrow it. Jennifer did not give Rivera permission to keep the rental car overnight.

Early the next morning, around 7:00 or 8:00 a.m., Jonathan again called Rivera and reached Rivera's voicemail. Once more, Jonathan told Rivera to return the rental car. Around noon that day, Griffith called the Riverside County Sheriff's Department to report the rental car stolen, and two deputies came to take a report.

Rivera testified that he asked Jennifer to borrow the rental car so he could visit his parole officer, but he denied that Jennifer gave him a definite time in which to return it. Instead, Rivera testified that Jennifer told him "to be safe" and to return the car "soon," to which he agreed. After visiting his parole officer, Rivera "got a little sidetracked" and

---

[2] "OnStar is a service provided in certain [General Motors] vehicles that gives its subscribers information such as driving directions, concierge services, stolen vehicle tracking, and roadside assistance." (*General Motors*, *Corp. v. Sheets* (Ind. Ct.App. 2004) 818 N.E.2d 49, 51, fn. 2.)

did not return to the Hummels' home. Rivera drove to a friend's house in Wildomar around noon, and that night he drove to the Pechanga casino. Rivera testified that the Hummels had tried to contact him to return the rental car, but he did not return it because he "was caught up with having fun at the casino." Rivera stayed at the casino until early the next morning, and instead of driving to the Hummels' home he drove to his friend Lisa Pack's house. Rivera knew the Hummels had been calling him to get the rental car back, but he did not go to their home because he was high on drugs.[3]

Pack was not at home when Rivera arrived, but someone let him into the house and he waited there for Pack to return. Later that day, Rivera drove to Riverside to meet Pack. When Rivera and Pack returned to Wildomar, defendant was at the house. Sometime later, Rivera let defendant drive the rental car to visit defendant's probation officer in Moreno Valley. Rivera told defendant that he, Rivera, "had [the] car over the past night, ha[d]n't returned it, they've been calling me, calling me, and I ha[ve] to return it. Eventually." Rivera did not have a driver's license, so he let defendant drive the car while he rode in the passenger seat. Later that night, defendant stopped at a gas station in Riverside. Rivera went inside the gas station. When Rivera came back outside, defendant and the rental car were gone. Rivera did not give defendant permission to take the rental car from him. Rivera did not call the police.

---

[3] Rivera testified for the People under a grant of use immunity.

5

On cross-examination, Rivera testified that he knew the Hummels had been calling him to return the rental car, that he kept the car longer than he was supposed to, and that even though he no longer had their permission or consent to have the rental car, he still did not return it. On redirect, Rivera testified that he did not let defendant "borrow" the rental car, but that he merely let defendant drive it because defendant had a driver's license, and Rivera did not.

At approximately 10:15 a.m., on March 6, 2013, Officer Florez with the Hemet Police Department drove to a parking lot in Hemet in response to a call about a "GPS hit" from OnStar on a stolen vehicle. Florez found the Chevrolet Cruz rented by Griffith in the parking lot of a Verizon store. When Florez approached the rental car, he saw a man sitting in the passenger seat who identified himself as Rundieuz Odom. Odom appeared to be surprised when Florez told him that the rental car was stolen. When Florez asked where the driver of the rental car was, Odom said his friend was inside the Verizon store.

Florez entered the store and contacted defendant, who was holding the keys to the rental car. After reading defendant his *Miranda*[4] rights, Florez spoke to defendant. When Florez told defendant that the rental car had been stolen, defendant said he knew it was stolen but he decided to drive it anyway. Defendant told Florez that he had recently gotten out of jail and that Pack picked him up in the rental car. Later that evening, Pack let defendant borrow the car. Defendant told Florez that he looked at the registration and saw the vehicle was registered in San Francisco, so he "ran the vehicle" and learned that

---

[4] *Miranda v. Arizona* (1966) 384 U.S. 436.

6

it was stolen. Defendant told Florez that, after he learned the car was stolen, he called Deputy Stanley of the Moreno Valley Police Department to report the car stolen. Stanley told defendant that he needed to turn "the vehicle in to law enforcement." When asked by Florez why he was at the Verizon store instead of in the process of returning the stolen vehicle, defendant said he stopped at the store to buy a cellular phone before he turned the vehicle over to law enforcement. On redirect and cross-examination, Florez testified that defendant said he knew he should not be driving the stolen rental car.

Deputy Stanley testified he knew defendant because he had previously arrested him at the Moreno Valley parole office. At the time, Stanley gave defendant his telephone number and asked defendant to call him if he had any information about a fellow gang member who was being investigated in a homicide case. Stanley received a phone call from defendant around 4:00 a.m., on March 6, 2013, but Stanley told defendant to call him back later. Defendant said nothing about a stolen car. Defendant called Stanley again at 8:00 a.m. and said he had some information for Stanley, but Stanley told defendant to call the next day. Again, defendant said nothing about a stolen car. Defendant did not call Stanley back.

*Relevant Jury Instructions*

The trial court instructed the jury with a modified CALJIC No. 14.36 on the elements of vehicle theft in violation of Vehicle Code section 10851, as alleged in count 1, which provided in relevant part: "Every person who drives or takes a vehicle not his own without the consent of the owner and with the specific intent to deprive the owner either permanently or temporarily of his or her title to or possession of the vehicle

7

is guilty of a violation of [Vehicle Code] section 10851, a crime. [¶] In order to prove this crime, each of the following elements must be proved: [¶] One, a person took or drove a vehicle belonging to another person; [¶] Two, the other person had not consented to the taking or driving of his or her vehicle; and [¶] Three, when the person took or drove the vehicle, he had the specific intent to deprive the owner either permanently or temporarily of his or her title to or possession of the vehicle."

For receipt of a stolen vehicle in violation of Penal Code section 496d, subdivision (a), as alleged in count 2, the trial court instructed the jury with a modified CALJIC No. 14.65, which provided in relevant part: "In order to prove this crime, each of the following elements must be proved: [¶] One, a person bought or received a motorized vehicle, to wit, a 2012 Chevy Cruz, license plate number [XXXXXX]; [¶] Two, the vehicle had been obtained by theft or extortion; [¶] Three, the person in possession of the vehicle concealed or withheld or aided in concealing or withholding the vehicle from the owner or owners of such vehicle; and [¶] Four, that person knew that such 2012 Chevy Cruz was obtained by theft or extortion at the time he received, withheld, or concealed or aided in concealing or withholding from the owner or owners of such vehicle."

The court instructed the jury with CALJIC No. 14.66 on the defense of receipt or possession of stolen property with an innocent intent, and with CALJIC No. 1.24 for the definition of possession. The court also instructed the jury with CALJIC No. 17.06 that counts 1 and 2 were alleged in the alternative, and that the jury could not convict defendant of both vehicle theft and of receiving a stolen vehicle.

8

*Verdicts, Admissions, and Sentence*

Defendant waived his right to a jury or bench trial on the prior conviction allegations, and indicated he wished to admit those allegations if the jury were to render a guilty verdict. The jury found defendant not guilty of vehicle theft with a prior as alleged in count 1, but found him guilty of receiving a stolen vehicle as alleged in count 2. Thereafter, defendant admitted that he suffered four prison priors (Pen. Code, § 667.5, subd. (b)), including a prior conviction for vehicle theft (Veh. Code, § 10851, subd. (a)), and admitted that he suffered two serious and violent strike priors (Pen. Code, §§ 667, subds. (c), (e), 1170.12, subd. (c)).

Pursuant to Penal Code section 666.5, subdivision (a), the trial court sentenced defendant to the upper term of four years for his conviction of receiving a stolen vehicle with a prior conviction for vehicle theft, doubled pursuant to the three strikes law (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)), for a term of eight years in state prison. The court also sentenced defendant to one year each for his four admitted prison priors (§ 667.5, subd. (b)), to be served consecutively to the term imposed on count 2 for a total sentence of 12 years in state prison.

Defendant timely appealed.

9

II.

DISCUSSION

A.

*THE RECORD CONTAINS SUBSTANTIAL EVIDENCE THAT THE RENTAL CAR*

*WAS STOLEN WHEN DEFENDANT RECEIVED IT*

Defendant contends there is insufficient evidence to support his conviction of receiving a stolen vehicle in violation of Penal Code section 496d, subdivision (a), because the People did not prove beyond a reasonable doubt that, before he received the rental car, either he or Rivera took the rental car with the intent to permanently deprive the owner of its title or possession. We conclude the record contains substantial evidence that Rivera stole the rental car before defendant received it.[5]

"'The law is clear and well settled. "On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]"'" (*People v. Jones* (2013) 57 Cal.4th 899, 960.) "'"In conducting such a

---

[5] The People's theory on count 2 was that Rivera stole the rental car from the Hummels, and that defendant knew the car was stolen when he received it from Rivera. We do not address whether the evidence supports the conviction on the theory that defendant stole the rental car from Rivera because the People did not advance that theory at trial. (*People v. Kunkin* (1973) 9 Cal.3d 245, 251 (*Kunkin*) ["We, of course, cannot look to legal theories not before the jury in seeking to reconcile a jury verdict with the substantial evidence rule"].)

review, we "'presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citations.]'" (*People v. Lee* (2011) 51 Cal.4th 620, 632.)

"'"'"Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. "'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" [Citations.]'"'" (*People v. Harris* (2013) 57 Cal.4th 804, 849-850.)

Penal Code section 496d, subdivision (a), proscribes receiving a motor vehicle that the defendant knows "has been stolen or . . . has been obtained in any manner constituting theft or extortion . . . ." "[T]o sustain a conviction for receiving stolen property, the prosecution must prove (1) the property was stolen; (2) the defendant knew the property was stolen; and (3) the defendant had possession of the stolen property." (*People v. Bland* (1994) 30 Cal.App.4th 220, 223, citing *Kunkin*, *supra*, 9 Cal.3d at p. 249 & *People v. Price* (1991) 1 Cal.4th 324, 464.)

11

Defendant only challenges the sufficiency of the evidence to prove the element that the rental car was stolen when he received it, on the ground that the People did not prove the rental car was taken with the specific intent to permanently deprive its owner of title or possession to the vehicle. "[T]he general rule is that the intent to steal required for conviction of larceny is an intent to deprive the owner *permanently* of possession of the property. [Citations.] . . . But the general rule is not inflexible: 'The word "permanently," as used here is not to be taken literally.' [Citation.]" (*People v. Davis* (1998) 19 Cal.4th 301, 307.) "The reference to the intent to permanently deprive is merely a shorthand way of describing the common law requirement . . . ." (*People v. Avery* (2002) 27 Cal.4th 49, 55 (*Avery*).) In *Avery*, the California Supreme Court held that the specific intent to steal, "although often summarized as the intent to deprive another of the property permanently, is satisfied by the intent to deprive temporarily but for an unreasonable time so as to deprive the person of a major portion of its value or enjoyment." (*Id*. at p. 58; see also *People v. Bacon* (2010) 50 Cal.4th 1082, 1117.)

Defendant may be correct that the People introduced no evidence that Rivera intended to permanently deprive the Hummels of possession of their rental car, but the People introduced substantial evidence that Rivera had the specific intent to take the rental car for much longer than he had permission to keep it, and that he kept the vehicle so long that it deprived the Hummels of the remaining value of the rental contract.

Griffith rented the vehicle for the Hummels on March 2, 2013, and promised to return it on March 4. Because he was going to work late on March 4, Jonathan called Hertz and obtained permission to return the rental car the next day, March 5. When Jennifer returned home at 8:00 a.m. on March 4 from driving Jonathan to work, Rivera asked to borrow the rental car to visit his parole officer. Jennifer agreed, but only on the condition that Rivera would return the rental car in one hour. Rivera told Jennifer he would return the rental car no later than 11:00 a.m.

Rather than drive back to the Hummels' home after visiting his parole officer, Rivera drove to a friend's home and, later that night, drove to the Pechanga casino. The next day, March 5, Rivera drove to a number of places in Riverside County, but he never returned the rental car. Despite the fact that the Hummels called Rivera multiple times and demanded that he immediately return the rental car, Rivera never returned the rental car to the Hummels. Rivera acknowledged that he did not have consent to keep the rental car as long as he did, that he kept it as long as he did because he was having fun and getting high, but that he knew he had to eventually return it. By keeping the rental car so long, Rivera deprived the Hummels of the remaining value of the rental agreement. As stated, Jonathan obtained permission from Hertz to keep the rental car until March 5 because he had to work late on March 4. Because Rivera had the rental car in his possession on the night of March 4, Jennifer was unable to pick Jonathan up from work,

and Jonathan had to call Griffith for a ride. This constitutes substantial evidence that the rental car was stolen when defendant received it from Rivera.[6]

In his reply brief, defendant contends the Hummels' loss of the remaining value of the rental agreement is not relevant here, and he argues that Rivera's "joyride" did not deprive the true owner of the rental car—Hertz—of a major portion of the value of the rental car. We assume that most joyriding cases involve the temporary taking of a vehicle directly from the registered owner, and that in such situations the temporary taking does not rise to the level of theft because it does not deprive the owner of a major portion of the value and enjoyment of the vehicle. But in this case, the rental car was not taken from Hertz—it was take from the Hummels.

Because the Hummels had the right to possess and use the rental car when Rivera took it, they, not Hertz, are the victims of larceny here. "As larceny involves the act of wrongful dispossession," when deciding whether the property was taken from its owner "the vital question is not who has title, or who has the right of possession, or who has

---

[6] We reject the People's alternative argument that the conviction on count 2 may be affirmed on the theory that Rivera embezzled the rental car from the Hummels. Contrary to the suggestion in the respondent's brief, the People did not argue to the jury that Rivera embezzled the rental car, so we cannot affirm the conviction on that theory. (*Kunkin*, *supra*, 9 Cal.3d at p. 251.) Moreover, such a theory is entirely unsupported by the evidence. "Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted." (Pen. Code, § 503.) "'The crime of embezzlement requires the existence of a "relation of trust and confidence," similar to a fiduciary relationship between the victim and the perpetrator.' [Citation.]" (*People v. Nazary* (2010) 191 Cal.App.4th 727, 742.) The evidence only established that the Hummels knew Rivera through his girlfriend and they allowed him to temporarily live in their garage. This hardly demonstrates the type of relationship of trust and confidence that characterizes a fiduciary. (See, e.g., Prob. Code, § 39; Rev. & Tax. Code, § 17006; 2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Property, §§ 31-33, pp. 54-58.)

custody,—but who has the legally-recognized possession." (Perkins & Boyce, Criminal Law (3d ed. 1982) Offenses Against Property, p. 297.) "'""[C]onsidered as an element of larceny, "ownership" and "possession" may be regarded as synonymous terms; for one who has the right of possession as against the thief is, so far as the latter is concerned, the owner.' [Citation.] It is, after all, a matter of no concern to a thief that legal title to the stolen property is not in the complainant. [Citation.] . . . 'Possession alone, as against the wrongdoer, is a sufficient interest to justify an allegation and proof of ownership in a prosecution for larceny.'"" [Citation.]" (*People v. Smith* (2009) 177 Cal.App.4th 1478, 1491, quoting *People v. Price* (1941) 46 Cal.App.2d 59, 61-62; see 3 Wharton's Criminal Law (15th ed. 1995) § 381, pp. 454-455 ["A person may be a victim of larceny even though he is not the owner; he need only have a special property right"].)

California cases have found sufficient evidence of larceny when the taking deprived "the victim in legal possession with a special interest in the property" of the benefit that was to have accrued from its possession (2 Witkin & Epstein, Cal. Criminal Law, *supra*, Crimes Against Property, § 21, pp. 45-46), even if there was no evidence that the taking reduced the value of the property itself. For example, in *People v. Brunwin* (1934) 2 Cal.App.2d 287, an amended indictment alleged the defendants trespassed onto land leased by an oil company and stole 1,004 barrels of crude oil, and the trial court sustained a demurrer to the indictment on the ground that the oil was part of the realty and could not be the basis for larceny charges. (*Id*. at pp. 288-289.) The appellate court disagreed. Although the holder of an oil and gas lease might not hold title to the realty itself and has no title to the oil and gas (*id*. at pp. 297-298), the rights under

15

the lease "entitle the lessee to complain of the unauthorized invasion of such rights by respondents who are alleged to have trespassed upon the land and to have feloniously severed and taken the oil from the realty" (*id*. at p. 299). Therefore, the court found the indictment sufficiently charged larceny of personal property, and it reversed the order sustaining the demurrer. (*Ibid.*) The trespass and theft of the oil was not alleged to have damaged or reduced the value of the land itself (see *id*. at pp. 288-289, 296), and the court had no occasion to address whether the title holder to the land suffered a temporary deprivation of a portion of the value of his or her land. It was enough that the alleged taking was a temporary deprivation of the value of the exclusive right of the leaseholder to extract oil from the property. (*Id*. at p. 299.)

Similarly, the Hummels were the primary beneficiaries of the rental agreement. Rivera took the rental car and intentionally kept it for an unreasonably long time without the Hummels' consent, and in the process he exhausted what remained of the Hummels' use and enjoyment of the rental car. That was a sufficient theft to support defendant's conviction for receiving a stolen vehicle.

B.

*THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON*

*THE DEFINITION OF "STOLEN" OR "THEFT" WAS HARMLESS*

Defendant also argues the trial court did not properly instruct the jury that, in order to find the rental car was stolen, for purposes of the charge of receiving a stolen vehicle, it had to find that the rental car was taken with the intent to permanently deprive its

16

owner of its title or possession. We conclude the trial court erred by not instructing on the definition of theft, but we find the error was harmless.

"In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case." (*People v. Martinez* (2010) 47 Cal.4th 911, 953, citing *People v. Breverman* (1998) 19 Cal.4th 142, 154.) The court normally has no sua sponte duty to revise correct jury instructions or to provide clarifying instructions absent a request. (*People v. Whalen* (2013) 56 Cal.4th 1, 81-82.) However, when the evidence in a prosecution for receiving stolen property raises the question of whether the property was taken with the intent to permanently deprive the owner of title or possession, the trial court has a sua sponte duty to instruct the jury that property is "stolen" or obtained by "theft" if it was taken with a specific intent to permanently deprive *or* with the intent to temporarily deprive the owner of a major portion of its value or enjoyment. (*People v. MacArthur* (2006) 142 Cal.App.4th 275, 280-281 (*MacArthur*); Judicial Council of Cal. Crim. Jury Instns. (2014 ed.) Bench Notes to CALCRIM 1750, p. 1116.)

In *MacArthur*, the defendant's girlfriend took her mother's jewelry without permission, and she asked the defendant to take it to a pawn shop. (*MacArthur*, *supra*, 142 Cal.App.4th at pp. 277-278.) The defendant was later charged with receiving stolen jewelry. (*Id*. at p. 278.) The evidence tended to show the girlfriend intended to pay back the pawn shop loan, redeem the jewelry, and return it to her mother in a short period of time as she had done many times before. (*Id*. at pp. 277-278.) The trial court instructed the jury with a modified CALJIC No. 14.65 that, in order to find the defendant guilty of

17

receiving stolen property in violation of Penal Code section 496, subdivision (a), it had to find that the defendant "received property which had been stolen . . . or obtained by theft." (*MacArthur*, at p. 279, fn. 3.) But the court did not instruct the jury on the definition of "stolen" or "theft." (*Id*. at pp. 279-280.)

On appeal, the defendant argued the record did not contain substantial evidence that he knew the jewelry was stolen when he received it, but the appellate court "saw a more basic concern." (*MacArthur*, *supra*, 142 Cal.App.4th at p. 279.) The appellate court quoted *Avery*, *supra*, 27 Cal.4th at page 55 for the proposition that "[a]n intent to *temporarily* deprive the owner of possession may suffice when the defendant intends 'to take the property for so extended a period as to deprive the owner of a major portion of its value or enjoyment. . . .'" (*MacArthur*, *supra*, at p. 280.) In light of the evidence, the court noted that, "to find defendant guilty of receiving stolen property, the jury needed to determine whether the jewelry had been taken with the intent to deprive the girlfriend's mother of possession for a sufficiently extended period. [Citation.]" (*Ibid*.) The appellate court held that failure to instruct on the requisite intent for theft was erroneous because it "[left] the jury with no basis for determining whether the jewelry had been stolen—an issue raised by the evidence." (*Ibid*.)

Here, the jury was properly instructed with a modified CALJIC No. 14.36, that a vehicle is stolen for purposes of Vehicle Code section 10851, subdivision (a), if it is taken with "the specific intent to deprive the owner either permanently or temporarily of his or her title to or possession of the vehicle." The court then instructed the jury with a modified CALJIC No. 14.65, that the crime of receiving a stolen vehicle in violation of

18

Penal Code section 496d, subdivision (a), includes the element that "the vehicle had been obtained by theft or extortion." But the trial court gave no additional instruction on what "theft" means. (See CALCRIM No. 1800; CALJIC No. 14.03.)

As defendant argues in his briefs, joyriding, which does not constitute theft, is a sufficient temporary taking for purposes of Vehicle Code section 10851. (See *People v. Allen* (1999) 21 Cal.4th 846, 851.) Because the evidence in this case called into question whether Rivera took the rental car with the intent to permanently deprive the owner of title or enjoyment, and the instructions as given might have left the impression that a mere temporary taking constituted theft, the trial court erred by not further instructing the jury on the specific intent for theft. (*MacArthur*, *supra*, 142 Cal.App.4th at p. 280.)

In any event, we find the error was harmless.  (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836.)  The record contains no evidence that Rivera intended to permanently deprive the Hummels of the rental car.  To the contrary, the evidence showed he intended to eventually return it.  And the record does not show a mere temporary taking, such that Rivera at most took the rental car for a joyride.  Instead, the record contains ample evidence that Rivera intentionally kept the rental car beyond the consent given to him by Jennifer, and for such a long time that it deprived the Hummels of the remaining value of the rental agreement.  Therefore, we conclude there is no reasonable probability that the error contributed to the verdict.

III.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____
J.

We concur:

RAMIREZ _____
P. J.

CODRINGTON _____
J.

20