Filed 10/14/24  CJ Freshway America Corporation v. Lim CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CJ FRESHWAY AMERICA CORPORATION,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MINHO LIM et al.,<br><br>    Defendants and Appellants. | B321415 & B322905<br><br>(Los Angeles County Super. Ct. No. 19STCV01929) |

APPEALS from judgment and order of the Superior Court of Los Angeles County.  Daniel S. Murphy, Judge.  Affirmed.

Park, Daniel E. Park, Alisa M. Morgenthaler, Samuel F. Izzo, Jason H. Woltman, Wil J. Rios, and Amirah Arif for Defendants and Appellants.

DLA Piper, John S. Gibson, Justin Ilhwan Park, David B. Farkas, Justin R. Sarno, and Stanley J. Panikowski, III, for Plaintiff and Respondent.

_____

# INTRODUCTION

A jury found defendants Minho Lim, Ki Soon Seo, N9 Int'l Trading, Inc. (N9), and Kaldea, Inc. (Kaldea) (collectively, defendants) liable for, among other things, receiving stolen property belonging to plaintiff CJ Freshway America Corporation (Freshway).  The jury found Lim, N9, and Kaldea jointly and severally liable for over $1.5 million in damages and Seo liable for over $900,000 in damages.  After entering judgment in Freshway's favor, the court awarded the company over $1 million in attorney fees.

Defendants appeal from the judgment and the postjudgment attorney fee award.  They raise several claims of error arising out of the jury trial, and they argue the court abused its discretion in calculating the amount of Freshway's attorney fee award.  We have consolidated both appeals for purposes of oral argument and decision.  As we explain, all of defendants' arguments lack merit.  Accordingly, we affirm the judgment and the fee award.

# FACTS AND PROCEDURAL BACKGROUND

## 1. The parties

Freshway is headquartered in Los Angeles.  The company imports food from overseas and sells it throughout the United States.

Seo is Lim's mother.  Seo formed Kaldea in 2017.  She was Kaldea's sole owner until she transferred ownership to Lim in 2019.  Lim is the sole owner of N9.

## 2. Lim's employment with Freshway

In July 2016, Freshway hired Lim as a sales associate.  Lim was responsible for negotiating Freshway's agreements with its suppliers and buyers.  Lim introduced Freshway to Meshquat

2

International Trading Company, LLC ("Meshquat") and MiCal Seafood Inc. (MiCal), which would become Freshway's biggest supplier and customer, respectively. Freshway often purchased seafood from Meshquat and sold it to MiCal and another buyer, Mariscos Bahia, Inc. (Mariscos).

Between 2017 and 2018, Lim and Meshquat engaged in a scheme to defraud Freshway. Lim convinced Freshway to approve 12 purchase agreements that Meshquat never fulfilled. When Freshway approved each agreement, it sent part of the purchase price to Meshquat. For some of the orders, fake bills of lading were generated, which purported to show that Meshquat sent goods to Freshway's buyers. After Lim presented a fake bill of lading to Freshway's management, the company paid Meshquat the remainder of the purchase price for the corresponding order. Freshway paid Meshquat about $1.1 million for orders that were never fulfilled.

Meshquat sent Kaldea and N9 kickback payments for the orders that Meshquat never fulfilled. On the same date Freshway sent a payment to Meshquat, Meshquat would transfer money to Kaldea or N9. In total, Meshquat sent Kaldea and N9 about $450,000 in kickback payments. Unbeknownst to Freshway, Lim also provided discounted seafood to MiCal and Mariscos in exchange for $50,000 in kickback payments sent to Kaldea. Lim used the kickback payments to pay for personal expenses, including entertainment, gambling, car payments, rent, and travel.

In August 2018, Freshway conducted an audit of orders that Lim negotiated. After Lim learned of the audit, he texted an employee at MiCal, "I think they found out. O-F-U-K." Lim deleted from his work computer files related to Freshway's

3

transactions with Meshquat, and he deleted from his phone text messages with employees at Meshquat. Kaldea also transferred $310,000 to Seo's bank account around the time of Freshway's audit.

Freshway's management interviewed Lim as part of the audit. Lim exchanged over 200 text messages with Seo, in which she coached him on how to behave during the interview. Among other things, Seo told Lim to deny ownership of Kaldea and "act like you know nothing."

Lim did not return to work at Freshway after his interview.

### 3. Freshway's lawsuit

Freshway sued Lim, Seo, N9, and Kaldea. Freshway's operative second amended complaint asserted the following causes of action: (1) breach of duty of loyalty against all defendants; (2) breach of written contract against Lim; (3) fraud against Lim, Kaldea, and N9; (4) aiding and abetting fraud against Seo, N9, and Kaldea; (5) fraudulent concealment against Lim; (6) aiding and abetting breach of duty of loyalty against Seo, N9, and Kaldea; (7) conversion against all defendants; (8) unjust enrichment against all defendants; (9) violation of Business and Professions Code section 17200 against all defendants; (10) interference with prospective economic relations against all defendants; (11) receiving stolen property in violation of Penal Code section 496 against all defendants; (12) declaratory relief against all defendants; and (13) negligent interference with prospective economic relations against all defendants.

In March 2021, Freshway moved for summary adjudication of its first, second, sixth, and eighth causes of action. The court granted summary adjudication in Freshway's favor on its first cause of action for breach of duty of loyalty as to Lim and its sixth

4

cause of action for aiding and abetting breach of duty of loyalty as to Seo, Kaldea, and N9. The court found Lim, Seo, Kaldea, and N9 were liable for $503,792 in damages against Freshway. The court denied Freshway's motion on the company's second cause of action for breach of written contract and eighth cause of action for unjust enrichment.

In February 2022, the court held a jury trial on Freshway's remaining causes of action. The jury made the following findings: (1) Lim was liable for breach of contract; (2) Lim, N9, and Kaldea were liable for making fraudulent misrepresentations; (3) Seo, N9, and Kaldea were liable for aiding and abetting fraud; (4) Lim was liable for fraudulent concealment; (5) Lim, N9, and Kaldea, but not Seo, were liable for conversion; (6) Lim, N9, and Kaldea, but not Seo, were liable for intentional interference with prospective economic relations; (7) all defendants were liable for receiving stolen property in violation of Penal Code section 496; and (8) only Lim was liable for negligent interference with prospective economic relations. As for the 11th cause of action for receiving stolen property, the jury found Lim, N9, and Kaldea were liable for $503,792 and Seo was liable for $310,000. The jury also awarded Freshway $50,000 in punitive damages against Lim, N9, and Kaldea. The jury found Freshway was not entitled to any compensatory damages.

In March 2022, the court entered judgment in Freshway's favor and against Lim, Seo, N9, and Kaldea. As to Lim, N9, and Kaldea, the court entered judgment against them, jointly and severally, for $1,561,376, consisting of $503,792, tripled under Penal Code section 496, subdivision (c), plus $50,000, with interest under Civil Code section 3287 and Code of Civil Procedure section 685.010. As to Seo, the court entered judgment

5

against her, jointly and severally with the other defendants, for $930,000, consisting of $310,000, tripled under Penal Code section 496, subdivision (c), with interest under Civil Code section 3287 and Code of Civil Procedure section 685.010.

Defendants appealed from the judgment.

**4.     Attorney Fees**

In May 2022, Freshway moved for $1,566,185.02 in attorney fees under Penal Code section 496, subdivision (c), and Code of Civil Procedure sections 1032 and 1033.5.[1]

In support of its attorney fees motion, Freshway submitted a declaration from one of its attorneys, Justin Ilhwan Park. Park was the lead attorney and billing partner representing Freshway. When Park began representing Freshway in January 2019, he worked at Mayer Brown LLP (Mayer Brown). Park continued to represent Freshway after he moved to DLA Piper, LLP (DLA Piper) in 2020.

Park has practiced for over 15 years, and he has extensive experience in complex commercial litigation. He billed Freshway between $705.37 and $755 per hour for work related to its lawsuit against defendants. Several other attorneys billed Freshway for work related to its lawsuit against defendants. Park described the qualifications and hourly billing rates of two of those attorneys: David B. Farkas and John Gibson. Farkas has nearly 15 years of experience in business and commercial litigation, and Gibson has more than thirty years of experience in antitrust, commercial, healthcare, and technology litigation.

---

[1]     Freshway initially requested $1,750,683.29 in attorney fees, but the company reduced its request after defendants identified a tabulation error in the company's fees calculation.

Farkas billed Freshway at $685 per hour, and Gibson billed Freshway at $882.75 per hour.

Park testified that the rates charged by DLA Piper's and Mayer Brown's attorneys for work related to this lawsuit were "in line with or significantly lower than the rates charged by law firms of similar caliber and reputation."  Park also submitted two articles—one published by the National Law Journal in 2014 and the other published by the Wall Street Journal in 2016—discussing the general increase in rates charged by large law firms across the country.  The National Law Review article also noted that, according to an annual national survey of large law firms, the average rate charged by partners in Los Angeles was $665, while the average rate charged by associates in Los Angeles was $401.

Freshway submitted billing invoices from Mayer Brown and DLA Piper, covering work related to Freshway's lawsuit that the two firms performed between January 2019 and April 2022. According to Park, the invoices showed how much time each timekeeper spent working on this lawsuit, in one-tenth-of-an-hour increments, and they included only work necessary to the lawsuit, while any time reflecting unnecessary or duplicative work was "written off."  The invoices were reviewed and approved by the responsible partner before they were sent to Freshway. Park redacted from the invoices text that would reveal attorney work product or attorney-client communications.

Park explained that Mayer Brown incurred $23,262.53 in fees preparing Freshway's attorney fees motion and opposing a motion to tax costs filed by defendants that had yet been billed to Freshway.  Park also noted that DLA Piper and Mayer Brown wrote off some of the work that they performed for Freshway

7

throughout this lawsuit, and that Mayer Brown provided Freshway a "17.5% discount on each invoice."

Defendants opposed Freshway's attorney fees request. Defendants argued the court should deny Freshway's request in its entirety, or significantly reduce any award of fees, because the requested amount of fees was unreasonable.

The court granted Freshway's attorney fees motion, finding that Freshway was entitled to recover its fees under Penal Code section 496, subdivision (c), because the jury found each defendant liable for receiving stolen property.  The court awarded Freshway a total of $1,050,000 in attorney fees.

The court explained that it reduced the billing rate for Freshway's attorneys to $600 per hour, finding that such a rate was reasonable based on " 'the "prevailing market rates in the relevant community" ' " and the court's " 'own knowledge and familiarity with the legal market.' "  Although the court noted that Freshway's redacted billing invoices did not itemize the hours worked by each timekeeper, it concluded that company's counsel billed more than 2,300 hours for work related to this lawsuit.  The court found that 1,750 of those hours were reasonably billed to Freshway because some of the work performed by Freshway's counsel was excessive and duplicative. The court also did not award fees for work performed by Freshway's counsel on the company's motion for summary adjudication, finding that motion did not relate to Freshway's claim for receiving stolen property under Penal Code section 496. Nevertheless, the court found that Freshway's claim for receiving stolen property was intertwined and shared common issues with the company's other claims.

Defendants appealed from the order awarding Freshway attorney fees.

## DISCUSSION

In their first appeal (B321415), defendants challenge the judgment entered after the jury trial. Defendants contend: (1) the court erred when it instructed the jury on the elements of receiving stolen property under Penal Code section 496; (2) insufficient evidence supports the jury's finding that Seo knowingly received stolen property; (3) kickback payments cannot constitute stolen property under Penal Code section 496; and (4) the court erred when it awarded Freshway treble and punitive damages under Penal Code section 496.

In their second appeal (B322905), defendants challenge the court's postjudgment order awarding Freshway $1,050,000 in attorney fees. Defendants do not contend the court erred in awarding Freshway attorney fees. Instead, they argue the amount of fees that the court awarded was unreasonable.

As we explain, all of defendants' arguments lack merit.

1. **Defendants have not shown the court erred when it instructed the jury on the elements of receiving stolen property**

The court used a modified version of CALCRIM No. 1750 to instruct the jury on the elements of receiving stolen property. Relevant here, the court instructed the jury that "[p]roperty is stolen if it was obtained by any type of theft, including theft by 'any false or fraudulent representation or pretense.'" The court did not define the elements of theft by false or fraudulent representation or pretense. Defendants argue the court erred by failing to do so. We disagree.

9

As a threshold matter, we reject Freshway's contention that defendants forfeited this issue by not objecting to the modified version of CALCRIM No. 1750 used by the court. A party is deemed to have objected to an instruction requested by the other party unless the complaining party agreed to or requested the challenged instruction. (*Martinez v. Rite Aid Corp.* (2021) 63 Cal.App.5th 958, 970, fn. 3; see also Code Civ. Proc., § 647.) Here, Freshway proposed the modified version of CALCRIM No. 1750 that defendants contend did not fully define the elements of theft by false or fraudulent representation or pretense. Although defendants did not object to the instruction on the grounds that it was incomplete, the record does not establish that they requested or agreed to the form of the instruction that the court used. Nevertheless, as we explain below, defendants have not shown the court erred when it did not instruct the jury on the elements of theft by false or fraudulent representation or pretense.

A court has a sua sponte duty to instruct on general principles of law that are closely and openly connected with the facts presented at trial. (*People v. Brown* (2003) 31 Cal.4th 518, 559.) Where there is a factual dispute about whether the property received was in fact stolen, the court must instruct the jury on the complete definitions of theft. (*People v. MacArthur* (2006) 142 Cal.App.4th 275, 280 (*MacArthur*).)

Defendants rely on *MacArthur* to contend the court had a sua sponte duty to instruct the jury on the elements of theft by false or fraudulent representation or pretense. Defendants' reliance on *MacArthur* is misplaced.

In *MacArthur*, the defendant's girlfriend frequently took her mother's jewelry, pawned it, and later retrieved it from the

10

pawn shop. (*MacArthur*, *supra*, 142 Cal.App.4th at p. 278.) The girlfriend sometimes did so with her mother's knowledge, and she and her mother occasionally retrieved the jewelry together. (*Id*. at p. 280.) The defendant was convicted of receiving stolen property after his girlfriend gave him some of her mother's jewelry to pawn. (*Id*. at pp. 278–279.)

On appeal, the reviewing court reversed the defendant's conviction, concluding the trial court prejudicially erred because it did not instruct the jury on the elements of theft. (*MacArthur*, *supra*, 142 Cal.App.4th at p. 280.) The court reasoned that the girlfriend's testimony about her pattern of pawning and retrieving her mother's jewelry "called into question whether any relevant participant had the requisite intent" to permanently deprive the mother of her jewelry. (*Id*. at pp. 280–281.) Without instructing on the definition of " 'stolen' " and " 'theft,' " the trial court "failed to provide any guidance to the jury for determining whether property had, in fact, been stolen." (*Id*. at pp. 279–280.)

Unlike the defendant in *MacArthur*, defendants have not shown there was any factual dispute at trial about whether the property at issue in this case was stolen. In their opening brief, defendants argue in a conclusory manner that it was disputed at trial whether the kickback payments received by Kaldea and N9 consisted of money that was "stolen" from Freshway. Defendants do not, however, point to any evidence, including any witness testimony at trial, that would support a finding that the money was not stolen. As appellants, it is defendants' burden to point to evidence in the record that supports their claims of error on appeal. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656 (*Keyes*).) By failing to do so, defendants have not shown the court

11

erred when it did not instruct the jury on the elements of theft by false or fraudulent representation or pretense. (*Ibid.*)

**2.    Substantial evidence supports the jury's finding that Seo received stolen property**

Defendants next contend insufficient evidence supports the jury's finding that Seo violated Penal Code section 496. Specifically, defendants argue that Freshway failed to prove that Seo knew she received stolen property when Kaldea transferred $310,000 to her personal bank account. We disagree.

To establish a violation of Penal Code section 496, the plaintiff must prove:  (1) the property was stolen; (2) the defendant knew the property was stolen; and (3) the defendant had possession of the stolen property. (*Lacagnina v. Comprehend Systems, Inc.* (2018) 25 Cal.App.5th 955, 970.)  A defendant's knowledge that property was stolen may be proved by circumstantial evidence. (*People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1019 (*Alvarado*).)  An inference that the defendant knowingly received stolen property may be supported by the defendant's possession of the property accompanied by suspicious circumstances. (*Id.* at pp. 1019–1020.)

Whether a defendant knowingly received stolen property is a question of fact that we review for substantial evidence. (*Alvarado*, *supra*, 133 Cal.App.3d at pp. 1019–1020.)  We " ' "view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor." ' " (*Moran v. Foster Wheeler Energy Corp.* (2016) 246 Cal.App.4th 500, 517.)  "We do not reweigh evidence or reassess the credibility of witnesses . . . [because] [w]e are 'not a second trier of fact.' " (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1246.)

12

Freshway presented the following evidence at trial. Meshquat engaged in a pattern of sending Kaldea and N9 kickback payments on the same dates that Freshway paid Meshquat for the orders that Lim negotiated and Meshquat never fulfilled. At the time Kaldea received the kickback payments, Seo was Kaldea's sole owner. Around the time of Freshway's audit of the orders that Meshquat never fulfilled, Kaldea transferred $310,000 to Seo's personal bank account. In addition, Seo exchanged hundreds of text messages with Lim during Freshway's audit—around the time that Kaldea transferred money into her bank account—in which she encouraged Lim to lie about Kaldea's ownership and his involvement in Meshquat's scheme to defraud Freshway. Seo's receipt of money from Kaldea after the company received kickback payments from Meshquat, the timing of Kaldea's transfer of that money to Seo, and Seo's suspicious behavior during Freshway's audit of the orders that Meshquat never fulfilled support an inference that Seo knew she received stolen property. (See *Alvarado*, *supra*, 133 Cal.App.3d at pp. 1019–1020.)

3. **Defendants have failed to show kickback payments cannot constitute stolen property under Penal Code section 496**

Defendants next contend that the court erred in allowing the jury to find they violated Penal Code section 496 because kickback payments can never constitute stolen property. As we explain, defendants have failed to show any error.

The trial court's judgment is presumed correct. (*Keyes*, *supra*, 189 Cal.App.4th at pp. 655–656.) The appellant carries the burden to prove otherwise by providing reasoned argument

13

with citations to relevant legal authority on each point made. (*Ibid*.) The reviewing court is not obligated to develop issues raised by the appellant. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455.) Instead, our review is limited to the issues that the appellant adequately raises and briefs. (*Ibid*.) The appellant forfeits any points that are not supported by reasoned legal argument and factual analysis. (*Keyes*, at pp. 655–656.)

In their opening brief, defendants rely solely on *McNally v. United States* (1987) 483 U.S. 350 (*McNally*) and *United States v. Holzer* (7th Cir. 1988) 840 F.2d 1343 (*Holzer*) to contend that kickback payments can never constitute stolen property for purposes of Penal Code section 496. Defendants' reliance on these opinions is misplaced.

*McNally* and *Holzer* addressed what type of conduct could support convictions under a former version of 18 United States Code section 1341, the federal mail fraud statute. In both cases, government officials were convicted of defrauding the public of its intangible right to the fair and honest administration of government. (*McNally*, *supra*, 483 U.S. at p. 352; *Holzer*, *supra*, 840 F.2d at p. 1345.) Although the officials in both cases received kickback payments—commissions and bribes—in exchange for their fraudulent conduct, neither opinion turned on whether such payments could constitute stolen property. (*McNally*, at pp. 356–361; *Holzer*, at pp. 1346–1350.) Rather, both opinions turned on the nature of the victims' rights that were implicated by the defendants' fraudulent conduct. (*McNally*, at pp. 356–361; *Holzer*, at pp. 1346–1350.) *McNally* held, and *Holzer* followed, that the version of the federal mail fraud statute in effect at the time the cases were decided required a defendant to deprive his or her victim of a tangible property interest, such as an interest

14

in money.  (*McNally*, at pp. 356–361; *Holzer*, at pp. 1346–1350.)
Because the government in both cases proved only that the
officials deprived the public of its intangible right to the fair and
honest administration of government, the courts reversed the
defendants' convictions.  (*McNally*, at pp. 356–361; *Holzer*, at
pp. 1346–1350.)

Neither *McNally* nor *Holzer* held that kickback payments
can never constitute stolen property, let alone that such
payments cannot support a claim for receiving stolen property
under Penal Code section 496.  *McNally* and *Holzer* therefore do
not support defendants' contention that kickback payments
cannot constitute stolen property under Penal Code section 496.
(*Santa Clara County Local Transportation Authority v. Guardino*
(1995) 11 Cal.4th 220, 243 (*Santa Clara County*) [opinions are not
authority for issues they do not consider].)  In fact, dicta from
*Holzer* undermines defendants' position.  As defendants
acknowledge, the court in *Holzer* discussed a hypothetical in
which kickback payments could constitute stolen property, where
the defendant received kickback payments consisting of money
that was intended for his employer. (*Holzer*, *supra*, 840 F.2d at
p. 1348.)  Freshway relied on a similar theory in this case—i.e.,
that N9 and Kaldea received kickback payments consisting of
money that was obtained from Freshway through fraudulent
means.

Defendants do not otherwise develop any argument in their
opening brief addressing this issue.  Indeed, defendants' opening
brief cites no authority discussing what constitutes stolen
property, or how courts go about determining what constitutes
stolen property, for purposes of Penal Code section 496.  In their
reply brief, defendants raise several new arguments for the first

15

time on appeal.  Defendants have forfeited these arguments by failing to raise them in their opening brief.  (*City of Palo Alto v. Public Employment Relations Bd.* (2016) 5 Cal.App.5th 1271, 1318.)

In sum, defendants have failed to show the court erred by allowing the jury to find defendants liable for receiving stolen property based on their receipt of the kickback payments at issue in this case.  (*Keyes*, *supra*, 189 Cal.App.4th at pp. 655–656.)

4.     **Defendants have failed to show the court erred by awarding Freshway punitive and treble damages**

Finally, defendants argue the court erred because it awarded Freshway both treble and punitive damages for Lim's, N9's, and Kaldea's violations of Penal Code section 496.  This argument lacks merit.

Under Penal Code section 496, subdivision (c), any person who has been injured by a violation of the statute "may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."  Generally, a plaintiff is not prohibited from recovering punitive damages simply because a statute authorizes a plaintiff to recover treble damages for the same wrongful act.  (*Marshall v. Brown* (1983) 141 Cal.App.3d 408, 418–419.)  If the purpose of the statutory damages is the same as that of the punitive damages, however, a plaintiff cannot recover both the statutory and punitive damages.  (*Id.* at p. 419.)

The only authority defendants cite in their opening brief to support their contention that Freshway was precluded from recovering both punitive damages and treble damages for Lim's, N9's, and Kaldea's violations of Penal Code section 496 is *Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal.5th 333 (*Siry*).

16

Specifically, defendants cite to the procedural background from *Siry*, which notes that the trial court granted the defendants' motion for a new trial in part and directed the plaintiff to "choose to collect either treble damages or punitive damages" under Penal Code section 496, subdivision (c). (*Siry*, at p. 342.)

But *Siry* did not address whether the trial court was correct in requiring the plaintiff to elect between an award of punitive damages and an award of treble damages under Penal Code section 496, subdivision (c). (*Siry*, *supra*, 13 Cal.5th at pp. 343–367; see also *id.*, at p. 346, fn. 6 [declining to address issue of whether trial court correctly required the plaintiff to elect between punitive and treble damages].) Nor did *Siry* otherwise discuss whether a plaintiff may recover both punitive damages and treble damages for a defendant's violation of Penal Code section 496. (*Ibid.*) Instead, *Siry* addressed a different issue—whether a plaintiff may recover both treble damages and attorney fees under Penal Code section 496, subdivision (c). (*Ibid.*) Thus, *Siry* does not support defendants' contention that the court erred by allowing Freshway to recover punitive damages and treble damages under Penal Code section 496. (See *Santa Clara County*, *supra*, 11 Cal.4th at p. 243 ["an opinion is not authority for an issue not considered therein"].)

Defendants do not otherwise develop any legal analysis addressing this issue. Because we must presume the court's judgment is correct, defendants have not shown the court erred by permitting Freshway to recover punitive and treble damages. (*Keyes*, *supra*, 189 Cal.App.4th at pp. 655–656.)

17

**5.	The court did not abuse its discretion in awarding Freshway attorney fees**

**5.1.	Applicable law and standard of review**

A plaintiff who prevails on a claim for receiving stolen property under Penal Code section 496 is entitled to an award of attorney fees.  (Pen. Code, § 496, subd. (c).)  In calculating the fee award, the court should first settle on a lodestar figure. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133 (*Ketchum*).) To do so, the court must determine the reasonable hours spent on the case by plaintiff's attorneys and multiply that number by the prevailing hourly rate for private attorneys in the community engaged in similar litigation.  (*Ibid*.)

The court has discretion to adjust the lodestar figure up or down based on a series of factors.  (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1240 (*Nichols*).)  Those factors include: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award.  [Citation.] The purpose of such adjustment is to fix a fee at the fair market value for the particular action.  In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services."  (*Ketchum, supra*, 24 Cal.4th at p. 1132.)

We review a trial court's determination of reasonable attorney fees for abuse of discretion.  (*Los Angeles Unified School District v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 516.)  "The ' "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his

18

judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Ketchum*, *supra*, 24 Cal.4th at p. 1132.)  Accordingly, our review of a court's award of attorney fees is highly deferential.  (*Nichols*, *supra*, 155 Cal.App.4th at p. 1239.)

### 5.2.   Reasonable hourly rate

Defendants contend the $600 hourly rate used by the court to calculate Freshway's lodestar figure was unreasonable. We disagree.

To determine an hourly rate for a lodestar figure, the court should look to "the 'prevailing market rates in the relevant community.' "  (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009.)  The court should consider the experience, skill, and reputation of the attorneys requesting fees, and it may rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate.  (*Ibid*.) The court may also rely on affidavits of the prevailing party's attorneys and other attorneys concerning " 'prevailing fees in the community,' " as well as rate determinations in other cases. (*Ibid*.)

The court did not abuse its discretion in selecting $600 per hour as the prevailing hourly rate for Freshway's lodestar figure. Freshway submitted evidence of the prevailing hourly rates for partners and associates at large firms in Los Angeles, as well as the background, experience, and billed hourly rates for three partners who worked on Freshway's lawsuit.  The rate selected by the court is almost $100 per hour lower than the lowest billing rate, and almost $300 per hour lower than the highest billing rate claimed by those partners.  In addition, according to the National Law Review article that Freshway submitted in support

of its fees motion, the rate selected by the court was lower than the average rate charged by partners at large firms in Los Angeles as of 2014, several years before Freshway's attorneys began working on this case and about eight years before the court calculated the challenged fee award. (See *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [the "reasonable hourly rate is that prevailing in the community for similar work"].)

Defendants rely on *Vasquez v. Packaging Corporation of America* (C.D.Cal., Aug. 17, 2020, No. CV19-1935 PSG (PLAx) 2020 WL 6785650) (*Vasquez*), a federal district court decision, to argue the court erred because it did not consult the 2018 Real Rate Report (Real Report) for fees in the Central District of Los Angeles when it calculated the prevailing hourly rate for Freshway's lodestar figure. Decisions of federal district courts are not binding on California state courts. (*Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419, 1432, fn. 6.) Regardless, the court in *Vasquez* noted only that the Real Report is a useful tool for calculating reasonable hourly rates. (*Vasquez*, at pp. 26–27.) It did not hold that courts are required to refer to the Real Report when calculating a lodestar figure. (*Ibid*.) In any event, the Real Report supports a finding that $600 per hour was a reasonable hourly rate for Freshway's lodestar figure. According to *Vasquez*, the Real Report shows that as of 2018, partners in Los Angeles charged hourly rates between $450 to $955, while associates in Los Angeles charged hourly rates between $382 and $721. (*Id*. at p. 27.) The hourly rate that the court selected in this case falls well within those ranges.

Defendants argue the court erred in calculating the hourly rate in this case because the actual averages of rates billed by Park and Farkas were lower than the rates outlined in Park's

declaration.  According to defendants, Park's average billing rate throughout this lawsuit was $687.69 per hour, and Farkas's average billing rate throughout this lawsuit was $669.67 per hour.  To support this argument, defendants include in their opening brief two tables that they created purporting to calculate the average billed rates for Park and Farkas.  But defendants do not cite to, or otherwise explain, where in the record the figures used in their calculations were derived.  Nor do they otherwise cite any evidence in the record showing Freshway supplied the court with inaccurate billing rates for some of its attorneys.  Defendants have, therefore, forfeited this argument.  (*Keyes*, *supra*, 189 Cal.App.4th at pp. 655–656 [the appellant forfeits any argument not supported by "appropriate citations to the material facts in the record"].)

In sum, we conclude the court did not abuse its discretion when it selected $600 per hour as the reasonable hourly rate for Freshway's lodestar figure.

### 5.3.   Reasonable hours spent on the litigation

A trial court has discretion to decide which of the hours expended by the plaintiff's attorneys were reasonably spent on the litigation.  (*Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 449.)  We may only reverse a fee award if it shocks the conscience and suggests that passion and prejudice influenced the determination or if it is not supported by the evidence.  (*Korchemny v. Piterman* (2021) 68 Cal.App.5th 1032, 1051; *Jones v. Union Bank of California* (2005) 127 Cal.App.4th 542, 549–550.)

Defendants contend the court erred when it found Freshway's attorneys billed the company for more than 2,300 hours spent working on matters related to this lawsuit.

21

According to defendants, Freshway substantiated about only 1,400 of those hours, because that is how many hours Park, Farkas, and Gibson, the attorneys identified in Park's declaration, billed Freshway for work related to this lawsuit. This argument lacks merit.

In its attorney fees order, the court explained that it reviewed the billing invoices that Freshway submitted in support of its attorney fees motion. Based on its review of those documents, the court found that Freshway's attorneys billed the company for more than 2,300 hours of work related to this lawsuit. In addition to the hours billed by Park, Farkas, and Gibson, Freshway's billing invoices also reflect work performed by other attorneys and timekeepers, a fact that the court acknowledged in calculating Freshway's lodestar figure. Defendants point to nothing in Freshway's billing invoices that undermines the court's finding that the hours billed by the company's attorneys exceeded 2,300 hours.

Defendants next argue the court miscalculated how many "timekeepers" billed Freshway for work spent on matters related to this lawsuit. Defendants have forfeited this argument by failing to cite anything in the record to support it. (*Keyes*, *supra*, 189 Cal.App.4th at pp. 655–656.)

Defendants also argue the court erred in finding Freshway's attorneys reasonably billed the company for 1,750 hours of work because (1) the size of Freshway's legal team "deviate[d] significantly from standard legal practice," and (2) the court failed to explain how many hours it attributed to work related to Freshway's summary adjudication motion. Defendants do not, however, cite any authority addressing what the "standard legal practice" is for the types of claims raised in this

22

lawsuit.  Nor do defendants cite any authority requiring the court to explain, item by item, how it calculated the number of hours a plaintiff's attorneys reasonably spent working on a lawsuit. In any event, it is well-settled that a trial court is not required to issue any, let alone a detailed, explanation of its fee award calculation.  (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 264 (*Rancho Mirage*).)

Here, Freshway submitted approximately 200 pages of billing invoices and a declaration from its billing partner assigned to this lawsuit describing the nature of the work performed by Freshway's attorneys.  After reviewing that evidence, the court found that many of the hours billed by Freshway's attorneys covered duplicative work or work related to Freshway's motion for summary adjudication, which the court determined was not sufficiently related to its receiving stolen property claim.  The court excluded those hours from its lodestar calculation when it found that Freshway's attorneys reasonably spent 1,750 hours working on matters concerning the company's receiving stolen property claim and its related causes of action. (See *Thayer v. Wells Fargo Bank, N.A.* (2001) 92 Cal.App.4th 819, 843–844 [a trial court should exclude from its lodestar calculation attorney hours spent working on duplicative matters].) Defendants have not shown the court abused its discretion in reaching that figure.

### 5.4.   Redacted billing invoices

Defendants argue the court erred when it admitted Freshway's redacted billing invoices.  This argument also lacks merit.

A court does not abuse its discretion when it awards attorney fees where the plaintiff has submitted billing records

23

that have been heavily redacted. (*Rancho Mirage*, *supra*, 2 Cal.App.5th at pp. 263–264.) Unlike some other jurisdictions, California "does not require detailed billing records to support a fee award." (*Id*. at p. 263.) An " 'attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records.' " (*Ibid*.)

Although Freshway redacted from most of its billing invoices the descriptions of the nature of work performed by its attorneys, the invoices show the hours billed, and the hourly rates charged, for each attorney who billed Freshway. In addition, Park testified about the type of work Freshway's attorneys performed in connection with this lawsuit, and he provided a summary of the types of work the billing invoices covered throughout the course of this lawsuit. The court did not abuse its discretion by relying on this evidence when calculating Freshway's fee award. (*Rancho Mirage*, *supra*, 2 Cal.App.5th at pp. 263–264.)

### 5.5. Negative lodestar multiplier

Finally, defendants contend the court should have applied a negative multiplier to Freshway's lodestar figure. Specifically, defendants argue the court should have reduced the lodestar figure because: (1) Freshway requested an inflated fee award; (2) Freshway's billing records include several "numerical oddities," such as one attorney allegedly recording a disproportionate number of billing entries that end in ".30" hours worked; and (3) Freshway miscalculated the amount of its initial request for attorney fees. These arguments lack merit.

As for defendants' first two points, they are forfeited because, like several of defendants' other arguments, they are not

24

accompanied by citations to the record where facts supporting the claims of error appear. (*Keyes*, *supra*, 189 Cal.App.4th at pp. 655–656.) As for defendants' third point, it is true that Freshway miscalculated the total number of fees it initially requested in its attorney fees motion. But the company acknowledged the miscalculation after defendants pointed it out and reduced the amount of fees it requested when it filed its reply brief. The court noted the reduced request in its order awarding attorney fees, and it did not find that Freshway intentionally miscalculated its initial request or otherwise engaged in any inappropriate conduct with respect to its attorney fees motion.

In any event, it is well-settled that application of a positive or negative lodestar multiplier is completely discretionary. (*Ketchum*, *supra*, 24 Cal.4th at p. 1138; *Snoeck v. ExakTime Innovations, Inc.* (2023) 96 Cal.App.5th 908, 920.) Nothing in the record shows the court abused its discretion by not applying a negative multiplier to Freshway's lodestar figure.

As we explained above, the court considered Freshway's evidence supporting the attorney fees motion when it calculated the lodestar figure, and it awarded Freshway an amount of fees that was significantly lower than the amount that Freshway requested. In calculating its lodestar figure, the court reduced the hourly rate requested, and the total hours billed, by Freshway's attorneys. The court reasonably could have concluded that because it reduced both Freshway's requested hourly rate and total hours billed in calculating the lodestar figure, it did not also need to apply a negative multiplier to that figure.

## DISPOSITION

The judgment and postjudgment attorney fee award are affirmed.  Freshway shall recover its costs on appeal.

VIRAMONTES, J.

WE CONCUR:

GRIMES, Acting P. J.

WILEY, J.